STATE OF MISSOURI *ex rel.* JOSEPH DOME *et al.*, Defendant in Error, *v.* ORVILLE WILCOX, Plaintiff in Error.

1. *Act as to organizing schools not unconstitutional because to be submitted to popular vote.*—The Legislature can not propose a law and submit it to the people to pass or reject it by a general vote. But chapter 47 of Gen. Stat. 1865, authorizing cities, etc., to organize for school purposes, became valid on its passage; and if the people, by vote, elected not to avail themselves of its privileges, their action did not in the least impair its force. It can not be held unconstitutional merely because it depends for its efficacy on the vote of the people.

2. *Act as to organizing schools, etc., not unconstitutional, as being special in its nature.*—Chapter 47, Gen. Stat. 1865, is not obnoxious to section 27, article 4, or ·section 4, article 8, of the constitution, as being special in its nature. Special statutes therein referred to are such as relate to individual classes or particular localities. Had the act applied to a certain specified town or a single corporation, it would have been in conflict with those sections. That law is as general ás is consistent with its scope and design, and no law more general could be framed to effectuate the object in view.

3. *Act as to organizing schools—Loaning credit by town, for purpose of, constitutional.*—Section 14, article 11, of the State constitution has exclusive reference to municipal corporations becoming stockholders and loaning their credit to private companies, associations, and corporations, and can not be applied to a case where (as under chapter 47, Gen. Stat. 1865) a town loans its credit for public school purposes.

### *Error to Fifth District Court.*

*McFerran, Collier,* and *Broaddus,* for plaintiff in error.

I. Chapter 47, Gen. Stat. 1865, is unconstitutional. It is not a law of its own force, but depends for its vitality upon a vote of the people of the locality, which vote can neither make it a law nor repeal the general law under which the plaintiff in error claims a right to the office of school director. (State v. Scott, 17 Mo.

521, 530 ; Const. Mo., art. 3, § 1, art. 4 ; 23 Barb. 355 ; 4 Seld. 483 ; 4 Ind. 347 ; 10 Ind. 72 ; Barto v. Himrod, 8 N. Y. 483 ; 5 Iowa, 496 ; Sedgw. on Stat. and Const. Law, 165 ; 2 Iowa, 205–6, confirmed in 9 Iowa, 203 ; 8 N. Y. 489, 490 ; 23 N. Y. 456 ; 1 Ohio St. 622 ; 16 U. S. Dig. 130, § 8 ; 19 U. S. Dig. 130, § 8 ; *id.* 128, § 19 ; 18 U. S. Dig. 138 ; Lafayette v. Jenners, 10 Ind. 70 ; Parker v. Commonwealth, 6 Barr. 507 ; Rice v. Foster, 4 Harr. 479.)

II. It is a special law, in cases for which provision can be and is required to be made by general laws, by the constitution of the State. (Const. Mo., art. 4, § 27 ; *id.* art. 8, §§ 4, 5 ; 5 Ind. 557 ; 10 Ind. 72 ; 23 N. Y. 447 ; 13 Cal. 175 ; Sedgw. on Stat. and Const. Law, 62, 482–7 ; 2 Bouv. Dic. 538, word " special;" 9 Cal. 502.)

III. The constitution requires equal provision to be made for all the children in the State between the ages of five and twenty-one years, in the matter of free schools ; but chapter 47 destroys the equality of the constitution, and provides special privileges for the children, and imposes special burdens on the citizens in towns and villages not imposed upon other citizens of the State. (Const. Mo., art. 9, p. 40 ; Gen. Stat. 1865, ch. 47, p. 274.)

IV. Chapter 47 is unconstitutional and void, because in conflict with section 14, article 11, of the constitution, in this : that it authorizes the school corporation to loan its credit without the assent of two-thirds of the qualified voters.

*Blenis & Collins*, for defendant in error.

I. Chapter 47 is constitutional and valid. (State *ex rel.* Hixon v. Lafayette County Court, 41 Mo. 39–41 ; Blair v. Ridgley, 41 Mo. 63–175 ; Const. Mo., art. 8, § 4 ; Sess. Acts 1867, p. 160, § 5 ; 1 Blackst. 86 ; People v. Rogers, 13 Cal. 165 ; People v. Coleman, 4 Cal. 49 ; Smith v. Judge of Twelfth District, 17 Cal. 552 ; City of St. Louis v. Russell, 9 Mo. 512.)

II. Chapter 47 is a general law. (Sedgw. on Stat. and Const. Law, 15, 176 ; 1 Blackst. 86 ; Bouv. Law Dic., " special statutes ;" Const. Mo., art. 4, § 27 ; Smith v. Judge of Twelfth District, *supra.*)

III. It is no delegation of legislative power to so frame a law that by its terms it must be submitted for approval and be approved by those for whom it was made before it can bind them. (Hobart v. The Supervisors of Butts County, 17 Cal. 25–30, 35–6; Blanding v. Burr, 13 Cal. 357; Sedgw. on Stat. and Const. Law, 463; Moers v. City of Reading, 21 Penn. St. 189; Sharpless v. The Mayor of Philadelphia, 21 Penn. St. 157; Gibbons v. Ogden, 9 Wheat. 1; 4 Wheat. 122; Cincinnati R.R. Co. v. Commissioners of Clinton County, 21 Ohio, 77; Clark v. The City of Rochester, 14 Barb. 447; 18 U. S. Rep. 38; 1 Sto. Com. 411; Starin v. Town of Genoa, 23 N. Y. 446, 452–3, 499; The City of St. Louis v. Russell, 9 Mo. 512.)

IV. The provisions in chapter 47, for levying a tax for school purposes on all property found within the limits of any school district organized under it, are constitutional and general. (Blanding v. Burr, 13 Cal. 343, 390; Sedgw. on Stat. and Const. Law, 413, 463, 501, 554; Sharpless v. The Mayor of Philadelphia, 21 Penn. St. 147; Moers v. City of Reading, 21 Penn. St. 188; Const. Mo., art. 1, § 30; id. art. 9, §§ 7, 8; Sess. Acts 1867 p. 162, § 10; The People v. Coleman, 4 Cal. 49, 62.)

WAGNER, Judge, delivered the opinion of the court.

The relator instituted a proceeding in the nature of a *quo warranto*, in the Livingston County Circuit Court, to determine his right to the office of school director for the town of Utica, it being a school corporation organized pursuant to chapter 47 of the General Statutes of 1865. His right to the office was resisted by the defendant, who was a director under the township organization, formed under the general law of this State in relation to common schools.

It is not denied that the town of Utica organized under chapter 47, and that all the necessary forms and conditions prescribed by the act were fully complied with; nor is it denied that the relator was legally elected as a director, in pursuance of its provisions. But the resistance to his right is placed wholly and exclusively on the ground that the chapter in controversy is unconstitutional, and therefore utterly invalid. The court below sustained the

validity of the law, and the question is brought here for review by writ of error.

A question of more grave and paramount importance to the people of this State could hardly be brought in this court. Nearly every town and village has organized under the law referred to. Acting in accordance with its authority, they have built school-houses, employed teachers, incurred debts, and systematized and put in operation rules and regulations, which have greatly redounded to our educational interests. Before a court would be justified in pronouncing against this system, and producing the inextricable confusion which must necessarily follow, it should furnish reasons for its decision, at once clear, cogent, and convincing. The first position assumed by the counsel for the plaintiff in error, to invalidate the proceedings, is that the chapter whence the authority is derived is not a law of its own force, enacted by the law-making power of the land, but depends for its existence upon a vote of the people of the locality where it is sought to be made operative.

The statute under which this contest arises authorizes the various cities, towns, and villages in this State to organize for school purposes, with special privileges. In order to do this, it provides that the qualified voters of the district, at an election to be held for that purpose, shall first vote to adopt the chapter. (See 2 Wagn. Stat. 1262–63, §§ 1–2 *et seq.*)

It is undoubtedly true that under our form of government, laws must be enacted by the legislative bodies to which the legislative power is committed by the constitution. The legislators can not divest themselves of the responsibility of enacting laws by a reference of the questions of their passage to their constituents.

One of the earliest cases on the subject is Barto v. Himrod, 4 Seld. 483, where the Legislature of New York framed a law concerning free schools. The Legislature did not enact or adopt the law; but the tenth section of the act declared that the electors should determine by ballot, at the next annual election, whether the act should or should not become a law. There it will be perceived that the Legislature merely proposed the law, and left its enactment to the people. The Court of Appeals

held that the law having never been passed by the Legislature — the only body under the constitution that was competent to pass a law — it was void and of no effect.

In 1851, the Legislature of this State enacted a law concerning roads, the thirty-third section of which declared that "if the County Court of any county should be of opinion that the provisions of the act should not be enforced, they might, in their discretion, suspend the operation of the same for any specified length of time, and thereupon the act should become inoperative in such county for the period specified in such order; and thereupon order the roads to be opened and kept in good repair, under the laws theretofore in force, as the special acts on the subject of roads and highways in the several counties of this State, that might take effect and be in force after the 4th of July next." The above section, giving the County Courts power to suspend the law at their pleasure, was adjudged by this court to be unconstitutional and void. (State v. Fields, 17 Mo. 529.)

The court said that the act was submitted to the control of every County Court, to make such order for its being in force in their county as they in their discretion might think proper. In other words, the act, by its own provisions, repealed the inconsistent provisions of a former act, and yet left it to the County Court to say which act should be in force in their county. The act did not submit the question to the County Court as an original question, to be decided by the tribunal, whether the act should commence its operation in the county; but it became, by its own terms, a law in every county not excepted by name in the act. It did not require, then, the County Court to do any act in order to give it effect. But being the law in the county, and having, by its provisions, superseded and abrogated the inconsistent provisions of previous laws, the County Court was by the section empowered, for such time as they might think proper, to suspend the act and revive the repealed provisions of the former act. When the question was before the County Court for that tribunal to determine which law should be in force, its action was the exercise of a legislative power which, under the constitution, could not be delegated to the County Court or any other body of

men in the State. The law was a positive enactment, and sought to give a tribunal the power to virtually repeal it, and revive another law in its stead. But in the same volume, in the case of State v. Scott, p. 521, it was intimated that a clause in a law establishing a new county, requiring it to be submitted to a vote of the people who were to bear the consequent burdens, might not be unconstitutional.

We have a general law on our statute book in regard to the incorporation of towns, investing the County Courts with the power to declare them incorporated upon the performance of certain conditions by the inhabitants. An attempt was heretofore made to overthrow this law for the reason that it was a delegation of political power, and that the proceedings of the court were legislative in their character. But this court has always upheld the law, holding that the corporation derived its whole power from the law, and that the court merely gave the law application when certain conditions were performed by the inhabitants. (Kayser v. Bremen, 16 Mo. 88, affirmed at the October term, 1869.)

The question was sharply contested and fully considered in the case of The City and County of St. Louis v. Alexander, 23 Mo. 483. There the act of the Legislature authorized the city of St. Louis to subscribe stock to the Ohio and Mississippi Railroad Company, to issue the bonds of the city, and to levy a special tax on all taxable property in the city, to pay the interest on the loan, provided that the qualified voters of the city should be in favor of such subscription. It was further provided that it should be the duty of the mayor of the city, immediately after the passage of the act, to order public notice to be given, in order that the sense of the qualified voters of the city might be tested as to the propriety of such subscription and loan on the part of the city. And the act prescribed how the election should be conducted; and if it should appear that there were more ballots for the subscription than against it, then the mayor and the council should subscribe the stock and issue the bonds. After great consideration, it was decided that the provision requiring the question of making the subscription to be submitted to the voters, was constitutional. (See also State v. Binder, 38 Mo. 450.)

Now, the Legislature can not propose a law, and submit it to the people to pass or reject it by a general vote. That would, indeed, be legislation by the people. But the proposition can not be successfully controverted, that a law may be passed to take effect on the happening of a future event or contingency. The future event—the happening of the contingency, or the fulfillment of a condition—affords no additional efficacy to the law, but simply furnishes the occasion for the exercise of the power. The law is complete and effective when it has passed through the forms prescribed for its enactment, though it may not operate, or its influence may not be felt, until a subject has arisen upon which it can act.

In the case we are now considering, the act took effect with the other laws contained in the statutes. It was passed according to the prescribed forms designated in the constitution. Its enactment did not depend upon any popular vote, but parties to be affected by it were at liberty to accept the privileges granted, and incur the burdens and obligations it would impose, as their interest or will should dictate. If they elected not to avail themselves of its privileges, it did not in the least impair its force; it still stood a valid enactment on the statute book. If they organized under it, they were entitled to the benefit of its provisions; but in either event the law remained the same. There is no pretense, therefore, for saying that the law is objectionable because it depends for its efficacy on the vote of the people. This point must be ruled against the plaintiff in error.

It is further contended that the law is invalid because it is special in its character, and contravenes section 27 of the fourth article of the constitution, which declares that "the general assembly shall pass no special law for any case for which provision can be made for a general law, but shall pass general laws * * * for all cases where a general law can be made applicable." The section in the constitution cited enumerates certain things, and the Legislature is prohibited from passing certain special acts applicable to them. The law in question is not included in the enumeration; and if it is liable to any constitutional objection, it is because it falls within the class of subjects where a general law might be passed and made applicable. Under

the provisions of the constitution a special law may be passed, but it must be in a case where a general law could not be made to apply. In that view of the subject we upheld the act organizing and establishing the Criminal Court of St. Louis, because necessary and highly advantageous in a city, though it would be useless and inapplicable to the State generally. (State v. Ebert, 40 Mo. 186.) But the enumeration of prohibited acts contained in the twenty-seventh section shows clearly what was in the mind of the convention when the section was passed — that it was intended to apply to acts, persons, and localities specifically.

Special statutes relate to certain individual classes or particular localities. Had the act applied to a certain specified town or a single corporation, it would have been special; but such is not the case. It is co-extensive with the State, and its influence is felt in every county and almost every township. It is conceded that it does not include in its operation every individual nor extend to all the territory, but that is not required. It is as general as is consistent with its scope and design, and no law more general in its nature could be framed to effectuate and carry out the object in view. This is also a sufficient answer to the point raised, that the act is in opposition to the fourth section of the eighth article of the constitution.

It has been insisted at the bar, in argument, that under the provisions of this law the town loaned its credit without the assent of two-thirds of the qualified voters, as prescribed by the constitution. But this is so obviously a mistake that it is not deserving of any particular consideration. The fourteenth section of the eleventh article of the constitution provides that the general assembly shall not authorize any county, city, or town to become a stockholder in, or loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto.

This section has exclusive reference to municipal corporations becoming stockholders and loaning their credit to private companies, associations, and corporations, and is incapable of being in any manner tortured so as to be applicable to the present case.

30—VOL. XLV.

St. Louis and St. Joseph R.R. Co. v. Richardson.

Upon a full view of the whole case, I have failed to see any reasonable objection to the validity of the law, and I accordingly advise an affirmance.

Judgment affirmed. The other judges concur.