————o————

William Lammert, Appellant, vs. Thomas C. Lidwell, Respondent.

1. *Legislation, delegation of to popular vote.*—It is now the established doctrine, that statutes creating municipal corporations, or imposing liabilities upon them, or authorizing them to incur obligations or make improvements may be referred to the people of the districts immediately affected to decide by their votes whether they will accept the incorporation or assume the burdens. But the legislature must enact a complete and valid law according to the prescribed usages. And it must derive its whole vigor and vitality from the legislature, and no additional efficacy from the popular vote.

2. *Restraint of animals—Acts concerning a delegation of the law making power are unconstitutional.*—The act of March 20th, 1873 (Sess. Acts 1873, p. 70), was by its title declared to be "an act to prevent domestic animals from running at large in those counties which, by a majority vote, may decide to agree thereto," and the act provided, that if, on a submission to popular vote, a majority favored their restraint, it should be unlawful for animals to run at large; and it prohibits the county court from ordering a special election determining the adoption of the law, more than once a year. It was held, that the act had no existence without the special election; that it was a delegation to the people of the law making power, and unconstitutional.

And the similar act of 1874, applicable to St. Louis county (Adj. Sess. Acts 1874, p. 239) was held amenable to the same objection.

*Appeal from St. Louis Circuit Court.*

*H. D. Wood, with C. H. Howry,* for Appellant.

I. By the constitution, Art. 4, § 1, the legislative power is vested solely in the General Assembly, and the act of March

20th, 1873, is void, as being a delegation to the people of such legislative power. (*Ex parte* Wall, 48 Cal., 279; State vs. Fields, 17 Mo., 529; Barton vs. Himrod, 8 N. Y., 483; Bank of Rome vs. Village of Rome, 18 N. Y., 38; Storm vs. Town of Geneva, 23 N. Y., 439; Thorn vs. Cramer, 15 Barb., 112; Parker vs. Commonwealth, 6 Pa., 507; Commonwealth vs. The Judges, 8 Pa., 391; State vs. Wilcox, 45 Mo., 459; Rice vs. Foster, 4 Harr., 479; State vs. Copeland, 3 R. I., 33; Railroad vs. Commissioners, 1 Ohio N. S., 77; People vs. Collins, 3 Mich., 371; State vs. Weir, 33 Ia., 134; Maize vs. State, 11 Ind., 342; Meshmeir vs. State, 11 Ind., 484; Article on Local Option Laws, 12 A. L. Reg., 130; Sedg. Const. Law., 135, note A.; Weir vs. Cram, 37 Ia., 649.)

*E. P. Johnson,* for Respondent.

The law under which the cattle were arrested was constitutionally enacted and adopted, and, even if the first law was faulty in some respects, it is cured by the second. (Laws Mo. 1873, p. 70, and 1874, p. 239; State *ex rel.* Dome vs. Wilcox, 45 Mo., 458; State *ex rel.* Henderson vs. Co. Court Boone County, 50 Mo., 317; State *ex rel.* Robbins vs. Co. Court New Madrid County, 51 Mo., 82; Hall vs. Bray, 51 Mo., 288; Township Organization Law, 55 Mo., 295.)

WAGNER, Judge, delivered the opinion of the court.

This was an action to recover the possession of twelve head of cattle, the property of plaintiff, alleged to be wrongfully detained by defendant. The defendant, who acted as one of the constables of St. Louis county, justified the taking and detention of the cattle, under and by virtue of an act of the legislature of this State, approved March 20, 1873, entitled "An Act to prevent domestic animals from running at large in those counties which, by a majority vote, may decide to agree thereto" (Sess. Acts 1873, p. 70), and of an act of the legislature, approved April 1st, 1874, entitled, "An act to restrain domestic animals from running at large in the county

of St. Louis, and to provide for the safe keeping and sale thereof." (Sess. Acts 1874 p. 239.)

A demurrer was filed to the answer, upon the ground that the matters therein pleaded constituted no defense to the plaintiff's cause of action. The demurrer was overruled, and the plaintiff declining to plead further, the interest of defendant in the property was, in accordance with the stipulation, assessed at $20, and on motion of defendant a judgment for that sum was entered in his favor.

The only questions presented by the record are, whether the acts referred to are constitutional and valid. The first section of the act of 1873 declares that the county court of any county in this State, shall, upon petition of one hundred freeholders of the county, at any general election, and may, upon such petition of one hundred freeholders, at any special election, cause to be submitted to the qualified voters of the county the question of restraining any domestic animals of the species of horse, cattle, mule, ass, swine, sheep or goat, from running at large, by a ballot , to be written or printed, for restraining any one or all of the species of horse, cattle, mule, ass, swine, sheep or goat, or against restraining the same, to be canvassed and returned in like manner as votes for State and county officers.

Section 2 provides, that if a majority of the legal voters of the county, voting at the election, are in favor of adopting a stock law, then such county shall be governed by the provisions of the act, from and after one hundred and fifty days after it has been so adopted by the legal voters of the county.

The third section makes it unlawful, in any county adopting the act, for any animal, or animals, of the species named, to run at large outside of the enclosure of the owner, and provides for taking them up, and if they are not reclaimed within a certain time, and the owner does not make a reasonable compensation for feeding and taking care of them, they are to be regarded as estrays, and dealt with accordingly.

By the constitution of this State the legislative power is vested in the General Assembly, composed of the senate and

house of representatives. They must exercise the legislative authority in the enactment of laws, and they cannot delegate their trust. The legislature cannot propose a law and submit it to the people to pass or reject it by a general vote, for that would amount to legislation by the people. But a law may be passed which is complete in itself, to take effect in a future contingency, or upon the happening of an event.

The question has been before this court upon several occasions, and the line of distinction has been drawn in reference to the different character of such laws. There is a general law upon the statute in regard to the incorporation of towns, investing the county courts with power to declare them incorporated upon the performance of certain conditions by the inhabitants. This law was contested for the reason that it was a delegation of political power, and that the proceedings of the court were legislative in their character. But the statute was decided to be valid, on the ground that the corporation derived all its power from the law, and that the court merely gave the law application when certain conditions were performed by the inhabitants. (Kayser vs. Brennen, 16 Mo., 88; State vs. Weatherby, 45 Mo., 17.) So, acts of the legislature authorizing towns, cities and counties to subscribe stock in corporations, and incur expenses for different purposes, have been uniformly upheld. The validity of such laws has never been doubted since the decision in the City and County of St. Louis vs. Alexander (23 Mo., 483). The provision in the statute authorizing cities and towns to organize for school purposes, upon a vote of the people, has been declared constitutional (State vs. Wilcox, 45 Mo., 458), and the township organization law was declared not to be liable to any objection, as it was a law which took effect from and after its passage, and where a majority of the voters in a county voted for it, their votes did not create the law, but placed the county voting for it within its provisions. (Town. Organ. Law, 55 Mo., 295.)

It may now be conceded as the established doctrine, that statutes creating municipal corporations or imposing liabilities upon municipalities, or authorizing municipalities to in-

cur debts and obligations, or to make improvements, may be referred to the popular vote of the districts immediately affected—that is to say, the people of such districts may decide whether they will accept the incorporation or will assume the burdens. This is the prevailing rule in reference to local measures. But in all these cases, the legislature had enacted a complete and valid law, according to the prescribed usages governing the passage of laws, and the happening of the contingency or the future event, which furnishes the occasion for the exercise of the power, gives no additional efficacy to the law itself. It derives its whole vigor and vitality from the exercise of the legislative will, and not from the vote of the people. But no body but the legislature can make or repeal a law. The provision of the road law of 1851, which declared that if the county court of any county should be of opinion that the provision of the act should not be enforced, they might, in their discretion, suspend the operation of the same for any specified length of time, and thereupon the act should become inoperative in such county for the period specified in such order; and, thereupon order the roads to be opened and kept in good repair under the laws heretofore in force, or the special acts on the subject of roads and highways, were adjudged to be unconstitutional and void in this court, as attempting to confer upon the county courts legislative power. (State vs Fields, 17 Mo., 529.)

In one of the leading cases on the subject (Barto vs. Hinrod, 4 Seld., 483), the legislature of New York framed a school law and submitted it to the people, one section providing that "the electors shall determine by ballot at the annual election to be held in November next, whether this act shall become a law;" and a further provision was made, in another section, that in case a majority of all the votes cast should be against the law, then the act should be null and void; but if the majority was in favor of the law, then the act should become a law and take effect. It was held that the law was unconstitutional; that the legislature had no power to submit a proposed law to the people, nor had the

people power to bind each other by it. The legislature of Delaware passed an act to authorize the citizens of the several counties of the State to decide by ballot whether the license to retail intoxicating liquors should be permitted. By this act a general election was to be held, and, if a majority of votes in any county should be cast against license, it should not thereafter be lawful for any person to retail intoxicating liquors within such county, but if a majority should be cast in favor of license, then licenses might be granted in the county so voting, in the manner and under the regulations in the act prescribed. The court in that State held that the act was void, as an attempted delegation of the trust to make laws. (Rice vs. Foster, 4 Harring., 479.) So, in Pennsylvania, a license law was held unconstitutional on similar grounds. (Parker vs. Com., 6 Penn. St., 507.) The question was recently discussed in New Jersey, in a case testing the validity of the Local Option Law of that State, and the law was held to be constitutional, on the ground that municipal corporations and townships, or the people thereof acting collectively, might be invested with authority to regulate or prohibit the retail of intoxicating liquors. (State vs. Morris, Com. Pl., 12 Law. Reg. N. S., 32.) But the court placed the decision distinctly upon the fact that the legislature enacted the law, and that it derived all its force and vitality from the enactment.

The reasoning of the court was in perfect harmony with all the leading decisions. It was said that if the right to declare what the law shall be in one case may be referred to the people, the right to do so may be given in all cases, and thus the legislature may divest itself wholly of the power lodged in it by the fundamental law, until by subsequent legislation it shall be rescinded; that it is also obvious that it is not competent to delegate to the people the right to say whether an existing law shall be repealed or its operation suspended. To say that what is now the law shall not hereafter, or shall not for a specified time, be the law, is in effect to declare the law to be otherwise than it now is, and is a

clear exercise of the law-making power. The will of the legislature must be expressed in the form of a law by their own act. If it is left to the contingency of a popular vote to pronounce whether it shall take effect, it is not the will of the law makers, but the voice of their constituents, which moulds the rule of action. If the vote is in the affirmative it is law; if in the negative it is not law. The vote makes or defeats the law, and thus the people are permitted unlawfully to resume the right of which they have divested themselves, by a written constitution, to declare by their own direct action what shall be law.

After pursuing this course of argument the court declared, upon an examination of the act under consideration, that the test was whether the enactment, when it passed from the hands of the lawgiver, had taken the form of a complete law, and it was decided that it was a complete law. It denounced as a misdemeanor the selling of liquor without a license; so far as it was positive and free from any contingency. It left to the popular vote to determine, not whether it should be lawful to sell without license, but whether the contingencies should arise under which license might be granted.

Our form of government is a democracy, but it is a representative democracy. It is impracticable for the people to assemble in mass to make laws, hence the power was delegated to representatives chosen for that purpose. It is not only the right of the representatives, when assembled in the legislature, to make laws, but it is their duty to do so. When the people, through the constitution delegated the law making power to the legislature, it conferred an authority and imposed a duty which could not be exercised by any other body of men. Therefore, every law, to have any binding force or validity, must, when it emanates from the legislative body, have the form and character of a complete enactment. It must operate by virtue of the legislative authority, and not depend upon popular action or the people's suffrages for its vitality. If the law is regularly enacted according to the prescribed forms of legislative procedure, it may well be al-

lowed to depend upon contingencies for its operation upon classes or localities, but it cannot be made to depend for its existence upon any other than the legislative will.

Is the law we are now considering in reference to the restraint of animals a valid law, or is it a mere proposition to the people of certain counties to make it a law if they see proper to do so? It is very evident that it can have no existence or obligatory force unless the same be imparted to it by a vote of the people. The title to the act does not purport to be the title of a general law or of a legislative enactment, but it declares that it is. an act to prevent domestic animals from running at large in those counties which, by a majority vote, may decide to agree thereto; not an act of the legislature, but an act of the counties which may in reality adopt it. The title is a fair index and exponent of the true intent and meaning of the law. The first section provides that the county court of any county may submit to the voters the question of restraining domestic animals, and then it is declared in the second section that, if a majority of the votes in any county is in favor of the restraint, then it shall be unlawful in that county for animals to run at large, according to the provisions of the third section. The fourth section prohibits the county court from ordering a special election for the adoption of the law oftener than once in each year. In other words, this last section gives the voters of each county the authority, once in each year, to determine whether they will enact a law for their special benefit. If they decline, under the provisions of the first and second sections, to legislate on the subject, then the law has no existence. The law is entirely special in its nature, and whilst under the construction that has been given to the clause in the constitution in regard to the special legislation, it has been held that the legislature was to judge whether the special law was needed or was applicable, it was at the most of even this construction a legislative discretion, and could be exercised only by the legislature. But here the legislature does not assume that even in its opinion the law is necessary in a given or

particular county. It remits the question wholly to the county itself. The second, or amendatory act, is made entirely applicable to St. Louis county, and by the act the people of the county determine for themselves whether they shall enact a special law. It is true the last named act does not provide for a new election, but the law only has any force or existence at all in the county by virtue of the election in the first instance. In examining the whole act I am unable to arrive at any other conclusion than that the law depends altogether on a vote of the people, and that it should be declared void, as being an attempt to exercise the law-making power by a body other than the legislature.

I therefore think the judgment should be reversed. All the judges concur, except Judge Vories, who is absent.