In re Incorporation of Village of North Milwaukee.

*May 23 — June 24, 1896.*

*Villages: Incorporation: Constitutional law: Delegation of legislative power to courts.*

1. The creation of municipal corporations is the exercise of legislative power, and cannot be delegated save as authorized by the constitution itself.
2. The circuit court, under the constitution, is purely a judicial court, and is not authorized to receive or exercise legislative power of any kind.
3. The act of determining, either tentatively or finally, whether it is for the best interest of the people that they should be incorporated into a village, and fixing the boundaries, is not the determination of a mere question of fact, but is the exercise of legislative discretion; and a statute (secs. 854–866, S. & B. Ann. Stats.) attempting to delegate such power to the circuit court is invalid. MARSHALL, J., dissents.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

For the appellants there were briefs by *Austin & Fehr,* and oral argument by *W. H. Austin.* On the question of the delegation of legislative discretion they cited, besides cases cited in the opinions, *O'Neil v. Am. F. Ins. Co.* 26 L. R. A. 715–717.

For the respondents there were separate briefs by *Mc-Vicker & Kehr*, attorneys, and *Timlin & Glicksman*, of counsel, and oral argument by *E. M. McVicker*. They cited, in addition to cases referred to in the opinions, *Bank of Chenango v. Brown*, 26 N. Y. 467, 469; *Cincinnati, W. & Z. R. Co. v. Clinton Co. Comm'rs*, 1 Ohio St. 88; *Moers v. Reading*, 21 Pa. St. 202; *Locke's Appeal*, 72 id. 498; Dillon, Mun. Corp. §§ 41, 183; *Guild v. Chicago*, 82 Ill. 472, 476; *Blanchard v. Bissell*, 11 Ohio St. 96; *Little Rock v. Parish*, 36 Ark. 166; *Ex parte Pritz*, 9 Iowa, 36; *Langworthy v. Dubuque*, 16 id. 182; *Borough of Little Meadows*, 35 Pa. St. 335; *Borough of Sewickley*, 36 id. 80; *Borough of Blooming Valley*, 56 id. 66, 69; *Stanfield v. State*, 83 Tex. 317; *In re Oliver*, 17 Wis. 681, and cases there cited; *Brodhead v. Milwaukee*, 19 id. 624; *Dinehart v. La Fayette*, id. 677; *Morristown v. Shelton*, 1 Head, 24.

Winslow, J. This is an appeal from an order incorporating the village of North Milwaukee and appointing inspectors of election therein, made by the circuit court for Milwaukee county under the provisions of sec. 861, S. & B. Ann. Stats. The order was made upon due petition and after due notice of hearing, and certain taxpayers and residents of the territory sought to be incorporated have duly appealed from the order, and claim that it is void because in making such order the circuit court performed a legislative function, and that the sections of the statute authorizing the making of such order are for that reason unconstitutional. This is the only question in the case that we find it necessary to consider.

The sections of the statute which authorize the proceeding in question are secs. 854–866, S. & B. Ann. Stats., and they may be summarized as follows: Sec. 854 provides that any part of any town or towns not less than one half square mile in area, and not included in any village, all lying in the

same county, containing a resident population not less than three hundred, or territory situated as above described, not less than one square mile in area, containing a resident population of four hundred or upwards to each square mile, may, upon compliance with the conditions of this chapter, become incorporated as a village, etc. Sec. 855 provides that the persons intending to make the application for incorporation shall cause to be made an accurate survey and map of the territory proposed for such village, showing the courses and distances of the boundaries and quantity of land contained therein. The accuracy of the survey and map shall be verified. They shall also cause to be made an accurate census of the resident population of such territory as it may be on some day not more than ten weeks previous to the time of application. Sec. 856: The map, survey, and census shall be left at some place in such territory for inspection and examination at all reasonable hours by any person interested for five weeks from the posting of the first notice of application. Secs. 857, 858: The intending applicants shall give notice, which shall be posted in public places and published for six weeks prior to date of hearing, that they will apply to the circuit court for an order incorporating the territory described in such notice as a village. Such notice shall also contain a reference to place where map, survey, and census may be examined. Sec. 859: The application shall be signed by not less than five taxpayers and residents of the territory, and shall set forth the boundaries of the territory, population, etc. Sec. 860 provides that the court shall hear all parties interested for or against such application who shall seasonably appear, may adjourn such hearing, direct a resurvey to be made or new census to be taken, etc. Sec. 861 provides: "If the court after such hearing shall be satisfied of the correctness of any such survey or re-survey and census; that all the requirements of the statute have been complied with; *that the lands embraced in such territory or any*

*part thereof ought justly to be included in the proposed village; that the interest of the inhabitants will be promoted by such incorporation;* and that such territory as ought to be included contained, at the time such census was first or subsequently taken, the population, in number and in proportion to the quantity of land therein, required in sec. 854, it shall make an order declaring that such territory, the boundaries of which shall therein be set forth by courses and distances, *and which may be enlarged or diminished by such court from the boundaries specified in such application, as justice may require,* shall be an incorporated village by the name specified in such application, or by such other name as the court shall deem proper, if the electors thereof shall assent thereto as hereinafter provided." It also provides that the order shall appoint three persons to act as inspectors of election. Secs. 862–864 provide that such inspectors shall give notice of election to be held in such territory to determine if such territory shall be incorporated, and for notice of such election, and for filling vacancies in such board of inspectors. Secs. 865, 866, provide for the canvass of the vote on such election, and, in case the proposition is carried, for the filing and recording of the petition, order of the court, and all papers, together with the result of such election, with the register of deeds, and that they shall be recorded at length within ten days after such election, and that the inhabitants shall, from the time of the recording of the order of the court aforesaid, be deemed a body corporate.

The court found, in making the order appealed from, among other things, that "the lands embraced in said territory *ought justly* to be included within the proposed village, *and that the interests of the inhabitants would be promoted by such incorporation.*"

As before stated, the claim of the appellants is that these powers attempted to be conferred upon the circuit court are legislative and political powers, and that they cannot, under our constitution, be conferred upon a court.

In approaching the question it will be well to first quote the constitutional provisions which have any legitimate bearing on it. By sec. 1 of art. IV it is provided that the legislative power shall be vested in a senate and assembly. By sec. 3 of art. XI it is made the duty of the "legislature" to provide for the organization of cities and incorporated villages. By sec. 31 of art. IV the legislature is prohibited from enacting any special or private law "for incorporating any town or village;" and by sec. 32 of the same article it is provided that the legislature shall provide general laws. for the transaction of any business prohibited by sec. 31 aforesaid. By sec. 22 of art. IV it is provided that the legislature may confer upon the various county boards of supervisors of the state such powers of a local *legislative* and administrative character as they shall from time to time prescribe. By sec. 2 of art. VII the *judicial power* of the state is vested in certain courts, of which the circuit court is one; and by sec. 8 of the same article the jurisdiction of the circuit courts is laid down. This last-named section may profitably be inserted here. It reads as follows: "The circuit courts shall have original jurisdiction in all matters, civil and criminal, within this state, not excepted in this constitution and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions."

In this country a corporation can only be created by *legislative* enactment. 1 Dillon, Mun. Corp. (4th ed.), § 37. Starting with this unquestioned general proposition, several plain and simple deductions may be made from the above-quoted constitutional provisions which are not really contested in this case. These deductions are: (1) That villages *must* be

*created* by act of the legislature, and not by the courts; (2) that they must be created under the terms of a general law, and not by special act; (3) that the legislature may delegate local legislative and administrative powers to county boards of supervisors, and to no other officer or body, save in so far as it may delegate powers of local self-government to municipal corporations; (4) that the circuit court, under the constitution, is purely a *judicial* court. All of these propositions seem to us so plain as to require no argument in their support.

It being the case, then, that the legislature must provide for the incorporation of villages by general law, it follows at once that, as to all villages to be formed in the future, this law must perforce prescribe certain conditions as to territory, population, consent of the residents, etc., upon compliance with which conditions the law is to go into effect in a particular case. The law is to stand upon the books a complete law. The legislative will and discretion has acted, and nothing further in that line is necessary, except in case of a delegation of some part of the legislative power to the county boards. When the conditions arise upon which it is to go into effect, and the existence of such conditions is properly determined and announced, it at once applies to that particular case, and a new village is created; not by the happening of the conditions, nor by the determination by some officer or body that such conditions have arisen, but by the energy of the law itself, which goes into operation upon the happening of the necessary conditions.

Such laws as these are very frequent, and, in fact, they are sometimes absolutely necessary to accomplish the best purposes of legislation. Such laws were considered, and their validity affirmed, by this court in *State ex rel. Att'y Gen. v. O'Neill*, 24 Wis. 149. See, also, *Smith v. Janesville*, 26 Wis. 291. In both of these cases the future contingent event upon which the law depended was the favorable re-

sult of a popular election, and it was held in both instances that such an event was a future contingency upon which the law might properly be limited to take effect, and that such a provision did not constitute a delegation of legislative power to the people. The same subject was discussed in the recent case of *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, and the doctrine of the *O'Neill* and *Janesville Cases* approved. In that case Mr. Justice PINNEY quotes a very clear and lucid statement of the principle, laid down by the supreme court of Pennsylvania, as follows: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to *determine some fact* or state of facts upon which the law makes, or intends to make, its own action depend." This brings us naturally to the simple and only question in this case, namely, Does the law before us go into operation upon the happening of a certain state of facts to be determined by the circuit court, or does it authorize and require the court to go further, and not only determine facts, but pass its judgment upon questions of legislative discretion? If the first branch of this question can be answered in the affirmative and the latter branch in the negative, then the law must be sustained, because the ascertainment and determination of questions of fact is clearly an exercise of purely judicial power. If, on the other hand, the latter branch of the question must be answered in the affirmative, then the law cannot be sustained, because such power cannot be delegated to the circuit court under our constitution.

There are a number of the questions upon which the court is required to pass when making the preliminary order of incorporation under sec. 861, R. S., which are unquestionably pure questions of fact. Such questions as whether the survey is correct, whether the census is correct, whether the population is as large as the statute requires in proportion to the area, and whether the statutory requirements have

been complied with, are all questions of fact; and no reason
is perceived why the court may not properly be authorized
to inquire into and determine these facts, nor why it may
not order an election and appoint inspectors.   But the other
questions upon which the court is required to pass are of a
different nature, and we see no escape from the conclusion
that in passing upon and deciding them the circuit court de-
termines legislative or political questions.   These questions
are (1) whether the lands embraced in the petition *ought
justly* to be included in the village, and (2) whether the in-
terest of the inhabitants will be promoted by such incorpo-
ration.   Furthermore, the provision authorizing the court
to enlarge or diminish the boundaries of the village as *justice
may require* seems to us equally an exercise of legislative
power.   It is vigorously claimed by the respondents that
these last-named questions are in truth questions of fact
only, but it seems to us that this claim is utterly untenable.
There is no proper sense in which they can be said to be
questions of fact.   They are rather ultimate conclusions
from all the facts.   Given all the facts which the legislature
require,— the area, the population, the census, the map, the
notices,— and does the order calling an election follow?  By
no means.   The circuit court, in addition to determining
these facts, must then say whether, in its judgment, it is
*best* that there should be a village.   This is no true question
of fact.   It is a mental conclusion, which may be based alone
on the previous bias of the mind of the presiding judge as to
the expediency of a small settlement assuming corporate
powers and obligations.   A circuit judge could prevent the
formation of a single new village in his entire circuit, not-
withstanding every requisite condition of fact were present,
simply because he believed that it was really best for small
communities to remain unincorporated.   It is very plain to
us that this belief or conclusion of mind of the circuit judge
is not a future event or fact or state of facts upon which a

In re Incorporation of Village of North Milwaukee.

law may be properly made to depend. The sum and sub-stance of the law is this: Villages may be incorporated *if the circuit court thinks best.* This amounts to nothing more nor less than the vesting in the circuit court of the powers of a third house of the legislature, which must be exercised in the affirmative before a village can exist. The legisla-ture has passed the law, the governor has signed it, and it has gone on the statute book, but the circuit judge in every case must add his concurrence before it is operative. The question as to whether incorporation is for the best interest of the community in any case is emphatically a question of public policy and statecraft, not in any sense a judicial ques-tion; and in attempting to submit that question to the de-cision of the circuit court the legislature has undoubtedly done that which the constitution forbids. If the decision of that question is to be delegated to any officer or body, it must certainly be to the county boards of supervisors.

That part of the section, also, which places the whole ques-tion of the boundaries of the proposed village under the control of the court is equally objectionable. This also vests in the court, without appeal, the decision of the entire ques-tion as to what territory, and consequently what people, shall comprise the new village. Here, again, the court must decide the question of political expediency, which is very plainly a question to be decided by the legislative branch of the government alone.

In conformity with the views here expressed will be found a number of decisions of courts of last resort in various states. *People ex rel. Shumway v. Bennett,* 29 Mich. 451; *State ex rel. Luley v. Simons,* 32 Minn. 540; *Galesburg v. Hawkinson,* 75 Ill. 153; *State v. Armstrong,* 3 Sneed, 634; *Territory ex rel. Kelly v. Stewart,* 29 Am. & Eng. Corp. Cas. 22, 1 Wash. 98; *People v. Nevada,* 6 Cal. 143; *People v. Carpenter,* 24 N. Y. 86. It is true that a number of courts of eminent respectability have taken a different view of the

question here involved.  In the states of Kansas, Iowa, Missouri, and Nebraska the courts have inclined to uphold the validity of legislation similar in some respects to that before us.  The decisions relied on in these states, however, do not by any means all sustain the validity of the law here in question.  For instance, in the cases of *Ford v. North Des Moines*, 80 Iowa, 626, and *People ex rel. Rhodes v. Fleming*, 10 Colo. 553, the only action that the court was authorized to take was to appoint commissioners to call an election, the question being determined by the electors.  In these cases it was rightly held that this act was not the exercise of legislative power.  Neither does the case of *Burlington v. Leebrick*, 43 Iowa, 253, sustain this law.  In the last-named case the law under consideration was a law providing for the extension of the corporate limits of a city, and by its terms the court was authorized to examine and decide the question whether the proposed addition was properly laid out and platted, and whether justice and equity required that it should be annexed to the city.  The court decides that these are questions of fact which may properly be submitted to a court.  Under a statute almost identical in terms this decision was followed by the supreme court of Nebraska in *Wahoo v. Dickinson*, 23 Neb. 426.  The supreme court of Kansas has also followed *Burlington v. Leebrick* and *Wahoo v. Dickinson* upon a question of enlargement of boundaries of an existing corporation, in *Callen v. Junction City*, 43 Kan. 627.  It is there decided that the question whether the extension of the limits of an existing city "will be to the interest of the city, and will cause no manifest injury to the persons owning the land" proposed to be included, is a question of fact which may properly be submitted to a court, although in the same case the principle is recognized and stated that "the power to create and regulate municipal corporations, *define, extend,* or *limit* their boundaries . . . is the exercise of purely legislative authority."  The ques-

In re Incorporation of Village of North Milwaukee.

tion was the same in *Forsythe v. Hammond*, 68 Fed. Rep. 774. Now, in all these cases of extension of boundaries the question of the creation of a municipal corporation is entirely absent. In none of them has the court a word to say or any discretion to exercise upon the question whether a municipal corporation shall or shall not exist; and while it is. undeniable that the reasoning of some of these cases would apply with equal force to a case of the creation of a new corporation, it is equally undeniable that the exact question before us is not in those cases.

We do not deem it necessary to further notice the authorities cited to sustain the constitutionality of the act in question. Many of them have palpably no bearing on the question before us, while some, like *Kayser v. Bremen*, 16. Mo. 88, certainly tend to sustain the respondents' position.. The reasoning of these cases is entirely unsatisfactory to us, and while we should prefer to sustain the law, if possible,. especially a law which has been acted upon for a number of years, and under which important interests have grown up, we cannot stultify ourselves by saying that a law is constitutional which our reason assures us is not.

The principles we hold in this case are simple: (1) The creation of municipal corporations is the exercise of legislative power; (2) legislative power cannot be delegated save as authorized by the constitution itself; (3) the circuit court,. under the constitution, is purely a judicial court, and is not. authorized to receive or exercise legislative powers of any kind; (4) the act of determining, either tentatively or finally,. whether it is for the best interest of the people that they should be incorporated into a village, and fixing the boundaries, is not the determination of a mere question of fact,. but is the exercise of legislative discretion, and, if such power be delegated at all, it must be delegated to the proper bodies named in the constitution.

*By the Court.*— Order reversed, and cause remanded with directions to dismiss the incorporation proceedings.

In re Incorporation of Village of North Milwaukee.

Marshall, J. I am unable to concur with the judgment of the court in this case, and on account of the importance of the questions involved I deem it a duty, in addition to recording my dissent, to state clearly the reasons therefor.

There is no difference of opinion, not the slightest, in respect to the constitutional division of powers between the legislative and judicial branches of the government under our system, and the importance of recognizing the scope and limitations of the powers of each. The government is di-- vided into three separate and distinct departments: the legislative, executive, and judicial. The court cannot make the law; that power is, by the constitution, vested exclusively in the legislature, and any law which confers or attempts to confer such power upon the court or any ministerial or any executive officer is unconstitutional and void. These propositions are' too well settled to be open to any discussion whatever. The question here presented is, Does the law of this state for the creation of villages confer upon the court legislative power; that is, power to make laws? It must be conceded that, while the legislature cannot delegate power to make law, it may make a law to take effect only on the ascertainment of certain facts and conditions, and may delegate the duty to determine the existence or nonexistence thereof to some other branch of the government. This subject was fully and exhaustively discussed in *Dowling v. Lancashire Ins. Co.* 92 Wis. 63. It must further be conceded that the legislature may confer the duty of determining when such facts and conditions exist upon the courts. So far, I understand, there is no difference of opinion between myself and my brethren. The law under consideration provides, in effect, that whenever the people of any part not less than one half square mile of any town, and not included in any village, all lying in the same county, which shall contain a resident population of 300 persons or more, wish to have the same incorporated, and the circumstances are such that the interests

of the inhabitants of such territory will be promoted by its incorporation, and such facts and conditions shall be made satisfactorily to appear to the court in the manner provided by statute, the electors of such territory *shall be permitted to determine for themselves* whether they desire such incorporation or not, and, if they decide in favor of such incorporation, then that such territory shall constitute a village corporation under the laws of this state. Now, here again we are all in accord that every fact or condition, properly so called, the ascertainment of which is prerequisite to incorporation, may properly be left to the courts for determination; but my brethren hold that such questions as whether the interests of the inhabitants of the territory will be promoted or not by the proposed incorporation, and whether the whole or a part only of such territory should be included, are not such facts or conditions; and to that I dissent.

The strongest authority relied upon against the constitutionality of the act — *State ex rel. Luley v. Simons*, 32 Minn. 540 — sustains it, save only in respect to the matters which this court holds to be fatal defects. It is there distinctly held that the power to determine whether the public interests will be subserved by incorporation or not, and what particular territory should be included in the corporate limits, involves the exercise of purely legislative power, and for that reason the act is unconstitutional. If the weight of judicial authority were in accordance with *State ex rel. Luley v. Simons, supra,* in view of the many respectable authorities in opposition I might yet hesitate to say that our village law is unconstitutional at this late day, after it has been on the statute books, and recognized by all departments of the government as valid, for nearly a quarter of a century, and villages have in the meantime been created under it in every county of the state. To destroy them now, after such long acquiescence, when to do so will lead to great complications

and embarrassments in public affairs, is not warranted, unless the unconstitutionality of the law is clear beyond all reasonable controversy. If there is a reasonable doubt in respect to the subject, that is sufficient to sustain the law. *Cooper v. Telfair*, 4 Dallas, 14; *Sharpless v. Philadelphia*, 21 Pa. St. 147; *Adams v. Howe*, 14 Mass. 340; *Fisher v. McGirr*, 1 Gray, 1; *State ex rel. Dome v. Wilcox*, 45 Mo. 458. To be sure, if an act be unconstitutional when passed, it cannot become any the less so, generally speaking, by long acquiescence therein. Nevertheless courts have always, and very properly, when an act has been recognized as valid for a long period of years and large interests have grown up under it, particularly when it pertains to the agencies by or through which the sovereignty of the state is exercised, been very slow to pronounce it unconstitutional, and have not done so unless, as stated, its unconstitutionality was made clear and beyond all reasonable question. In sustaining such laws the courts have gone so far as to hold that long acquiescence may control, even where constitutional questions are involved. *Dean v. Borchsenius*, 30 Wis. 236.

I invoke the rule referred to, recognizing that the question of whether the features of the law requiring a determination of such subjects as whether the welfare of the people will be promoted and what territory should be included, require the exercise of legislative power, is not free from doubt. I go no further, and need not for the purposes of this opinion, than the rule requiring that the law should be sustained unless shown to be unconstitutional beyond reasonable controversy. That at least such controversy exists, I may safely rely upon the numerous authorities hereafter referred to.

The supreme court of Minnesota, in the decision cited, is supported by *Galesburg v. Hawkinson*, 75 Ill. 153, and *People ex rel. Shumway v. Bennett*, 29 Mich. 451; while it is directly opposed by *Callen v. Junction City*, 43 Kan. 632; *Burlington v. Leebrick*, 43 Iowa, 252; *Emporia v. Smith*, 42 Kan.

In re Incorporation of Village of North Milwaukee.

433; *Kayser v. Bremen*, 16 Mo. 88; *Huling v. Topeka*, 44 Kan. 577; *Hurla v. Kansas City*, 46 Kan. 738; *State ex rel. Reed v. Weatherby*, 45 Mo. 17; *State ex rel. Dome v. Wilcox*, 45 Mo. 458; *Lammert v. Lidwell*, 62 Mo. 188; *Wahoo v. Dickinson*, 23 Neb. 426; *Grusenmeyer v. Logansport*, 76 Ind. 549; *Forsythe v. Hammond*, 68 Fed. Rep. 774; and many other cases that might be cited. As said by counsel for respondents, in nearly all the states where, like our own, the constitution prohibits the incorporation of villages by special laws, and requires the legislature to provide for such incorporation by general law, there exists legislation having all the essential features of that under consideration. From the very nature of things, the only way the legislature can provide for the creation of villages by a general law is to prescribe the particular conditions under which particular territory may have corporate existence, and then vest in some tribunal the power to determine when such conditions exist and to declare the law in force in respect to such territory. The whole subject was considered in the circuit court of the United States for the district of Indiana in *Forsythe v. Hammond*, 68 Fed. Rep. 774, where was involved the constitutionality of the general law of the state of Indiana for the creation of municipal bodies and the change of the boundaries of such bodies. The supreme court of Indiana, in *Grusenmeyer v. Logansport, supra*, had sustained the law, and the federal court decided likewise. It was contended that, though the legislature had in many instances conferred the power upon the courts to adjudge the annexation of territory to municipal bodies, such exercise of power was political and legislative; therefore that, under the constitution of Indiana, the courts could not exercise it. BAKER, District Judge, in deciding the case, said, in effect: The constitution requires the legislature to provide by general laws for the creation of municipal bodies. No limitation is placed upon its power to confer upon any tribunal it may select authority to determine when the conditions are present

In re Incorporation of Village of North Milwaukee.

which shall create such bodies. The power to hear and determine whether the conditions prescribed by law for the creation of such bodies exist or not is judicial in its nature and may properly be conferred upon the courts. Under such a system the creation of the corporation or its enlargement is not the act of the court, but the act and result of the law.

Authorities other than those mentioned may be found opposed to the views above expressed, but we may safely venture the assertion that the great weight of judicial authority is in favor of the contention that the questions of whether the incorporation will promote the interests of the people or not, and whether the territory requested to be incorporated in whole or in part only should be included in the incorporation, are questions of fact or conditions which may properly be left to the courts for judicial determination.

In *Callen v. Junction City*, 43 Kan. 632, ch. 69, Laws of 1886 of the state of Kansas, was under consideration. It provides that proceedings to change the boundaries of a city shall be by petition to the district court, and that if, on the hearing, *the judge shall be satisfied that adding the territory to the city will be to its interests, etc.*, he shall so find, etc. On the subject of whether such determination involves a question of fact only, proper for judicial consideration and decision, the court, speaking through SIMPSON, C., all the justices of the court concurring, said: "This question is one about which courts of last resort differ; the decisions being both contradictory and antagonistic. It being a question of doubt, therefore, it should be resolved in favor of the law, as it is well settled that the action of the legislative body must in all cases be upheld unless it manifestly is in contravention of the constitution;" and further said, in effect, that the act only requires the judicial ascertainment of facts which shall give effect to the law; it is in the nature of an action in which the rights of all the parties interested can be determined.

In *Burlington v. Leebrick*, 43 Iowa, 252, sec. 431, Code of Iowa, was under consideration. It prescribes the proceedings for annexing contiguous territory to incorporated cities and towns, and provides that it shall be by petition to the circuit court of the county, setting forth certain facts; provides for a hearing on such petition before the court, and that, if such court finds the allegations to be true, and *that justice and equity require that said territory, or any part thereof, shall be annexed to such corporation*, a decision shall be entered accordingly. It will be seen that the Iowa law contains all the elements regarded by my brethren as particularly contravening the constitution; that it requires the court not only to determine the justice of the application, but to determine what part of the territory shall be annexed and what not. The supreme court, speaking through DAY, J., said, in effect: The facts are all issuable; they are all proper for judicial determination. The court is required to determine the facts of the particular case, and determine whether it comes within the operation of existing law. That is a judicial, not a legislative, act.

In *Wahoo v. Dickinson*, 23 Neb. 426, the general law of Nebraska in relation to the same subject was under consideration, which law requires the court to find whether the allegations of the petition for incorporation are true, and whether *the territory, or some part of it, would receive material benefit from its annexation to the city, or that justice and equity require such annexation.* These questions were held to be of a judicial character and properly within the jurisdiction of the court, the proceedings being in the nature of an action where the parties interested in the subject are brought into court and their rights determined.

The law of the state of Missouri (ch. 175, R. S. 1845) provides that towns may be incorporated on petition to the court of two thirds of the inhabitants, setting forth certain facts, in case the court is satisfied of the existence of such facts and *that the prayer of the petition is reasonable.* The law

---

In re Incorporation of Village of North Milwaukee.

---

was held constitutional, for the reason that the duties imposed upon the court are judicial, not legislative, in their nature. *Kayser v. Bremen*, 16 Mo. 88.

In *Ford v. North Des Moines*, 80 Iowa, 626, the court, referring to the law of that state passed in 1858, providing for the organization of municipal corporations by proceedings in the county court, similar to those provided in this state for the organization of villages, said, in effect: 'Laws of a similar nature have been in force in this state for thirty years, and in numerous cases their validity recognized, and no authority has been cited for consideration that supports the claim that the law is not constitutional, except *People ex rel. Shumway v. Bennett*, 29 Mich. 451.' We may here say that the Michigan case is referred to and disapproved in nearly all the numerous cases above cited.

I rest the case without extended discussion of principles, contenting myself with calling attention to the numerous authorities directly in point. All the cases referred to fully recognize that the court cannot make the law; that must be done by the legislative branch of the government. The legislature cannot delegate its powers in that regard to the court, but it may pass a law, complete in itself, to have effect as to a particular section of territory, as in the case of the incorporation of a village, city, or town, or adding contiguous territory thereto, upon the existence of certain facts, and may vest the power of ascertaining the existence or nonexistence of such facts in the courts. It may provide that, when the required facts exist, so ascertained, the particular section of territory sought to be incorporated shall be by the court declared incorporated, and be governed by the law in relation to such incorporations. The body politic so created becomes the creature of the legislature, not of the court. It derives all its powers from the law passed as a perfect enactment of the legislative will. The court merely gives to such law application when the statutory requisites are judicially ascertained to exist.

We entered upon the discussion with the presumption in favor of the law, recognizing the rule that it should not be declared void unless shown to be so beyond all reasonable controversy. With such respectable courts sustaining it as Missouri, Kansas, Nebraska, Iowa, and Indiana, if anything more is needed to demonstrate that at least there is a reasonable controversy in respect to the subject, we may cite with confidence the able opinion of Mr. Justice HARLAN, speaking for the court in *Field v. Clark*, 143 U. S. 693, where was involved the validity of the reciprocity clause of the tariff act of 1890, in which, by sec. 3, it was provided that: " With a view to secure reciprocal trade, . . . whenever the president shall be satisfied that the government of any country producing and exporting sugar, tea, . . . and other articles, imposes duties or other exactions upon the agricultural or other products of the United States, which, in view of the free introduction of such sugar, tea, . . . and other articles into the United States, he may deem to be reciprocally unjust and unreasonable, he shall have the power and it shall be his duty to suspend by proclamation to that effect the provision of the act relating to such free introduction . . . *for such time as he shall deem just.*" This was attacked on the ground that it confers legislative power upon the executive department of the government. It will be noted that the act conferred upon the executive the same power conferred upon the court in the law under consideration, challenged as not involving the determination of a fact, but the exercise of legislative discretion; that is, to pass upon the question of *the reasonableness or justice of allowing the act to be in force; the question of whether, under the circumstances of any particular case, the interests of the people of this country demand that the act shall be or shall not be in force.* After a most careful examination and discussion of the whole subject, the court sustained the law, and held, in effect, that the feature of the law referred to only conferred upon the president

power to determine facts; that the language requiring him to examine into the justice of giving effect to the tariff law or suspending it in certain cases implied that he should examine into the regulations existing between this and other countries, and determine whether they are reciprocally equal and reasonable or unequal and unreasonable; that having determined that fact, his duty was prescribed by the law, nothing being left to his discretion but the duration of the suspension; that this relates only to the enforcement of the legislative policy established by law.    Says Mr. Justice HARLAN: "It cannot be said that in ascertaining the fact [the question of whether the reciprocal relations are equal and reasonable or unequal and unreasonable] and issuing his proclamation in obedience to the legislative will, he [the president] exercises the function of making laws.    Legislative power was exercised when Congress declared that the suspension should take place on the named contingency. He is not required to make law, but is made the agent to ascertain and declare the event when the expressed will of Congress should take effect.    It is part of the law itself." The doctrine so clearly stated by Mr. Justice HARLAN is supported by a long line of decisions in the federal supreme and other courts, and shown to have been recognized in the administration of federal affairs from the foundation of the government.    It requires a refinement of judicial reasoning and analysis much greater than I am capable of to observe any substantial difference between the feature of the tariff law so held to be free from constitutional objections and that in our general village law which my brethren conclude is unconstitutional and void.    We find the precise feature in the village law which Mr. Justice HARLAN held clearly saved the tariff act from constitutional objections, namely, that the court, having determined the facts, including whether the interests of the community will be promoted by the incorporation or not, has no discretion as to the action to be

taken whether the law shall take effect or not as prayed for by the petitioners. Such questions having been determined, the law provides that "the court shall make an order declaring the territory . . . an incorporated village. . . ."

This opinion has been drawn out to a considerable length, but the importance of the questions will be considered, we apprehend, a sufficient justification. It is seldom that a question of such grave and far-reaching importance to the people of this state finds its way to this court for determination. The law in question has been recognized as valid, as said before, for upwards of twenty years, and villages in great numbers have been organized under it, and now exist in every county. They have made public improvements, incurred debts, issued securities of various kinds, which are now outstanding; each forms a part of the system of the state for local, county, and state taxation; each constitutes a separate government for many purposes, with all that the term implies; forms a precinct for purposes of elections,— village, county, state, and national; and, as said in *State ex rel. Dome v. Wilcox,* 45 Mo. 458, referring to a similar law of Missouri, under similar circumstances: "Before the court can be justified in pronouncing against the system and producing the confusion which must follow, it should furnish reasons for its decision at once clear, cogent, and convincing." My brethren are convinced that such reasons exist, and to that I am unable to agree. As said by DIXON, C. J., in *Dean v. Borchsenius,* 30 Wis. 236, where a proposition was advanced for the first time that all the village and city charters of the state theretofore granted were unconstitutional and void: "The uninterrupted practice of a government prevailing through a long series of years, and the acquiescence of all its departments, legislative, executive, and judicial, sometimes become imperative even on constitutional questions. If ever there was such a case, this would seem to be one."