State *v.* Field.

STATE, Plaintiff in Error, *vs.* FIELD, Defendant in Error.

1. In a general law affecting private rights, which takes effect by its terms, a
clause authorizing the county courts to suspend it at pleasure in their sev-
eral counties, is unconstitutional and void, and may be stricken out of the
act. So, the thirty-third section of the act concerning roads, approved
March 3, 1851, is void.

*Error to Saline Circuit Court.*

*Gardenhire,* (attorney general) for the State. The legis-
lature organizes corporations and authorizes them to make
by-laws for their government. So courts are organized and
authorized to make rules for their government. What is the
difference between these by-laws and rules of court, and the
order of the Saline county court? Corporations make the law
of streets and alleys; and why may not county courts make
the law of roads?

*Hayden*, for defendant in error. The court below properly quashed the indictment, for the reason that the act of 1851 repealed the act of 1845, which made the offence charged indictable. The order of the Saline county court, professing to suspend the operation of the act of 1851, was a nullity, because the legislature had no power to delegate such authority to that court. The order is in the nature of a legislative and not a judicial act. The constitution of our state assigns to the three branches of government their respective powers, and neither can delegate its powers, nor exercise powers confided to another. *Rice* v. *Foster*, 4 Harrington, 479. 6 Barr, 507.

GAMBLE, Judge, delivered the opinion of the court.

Field was indicted in the Circuit Court of Saline county for neglect of duty as a road overseer, under the sixty-sixth section of the act concerning roads and highways, R. C. 969. He moved to quash the indictment because the act of March 3, 1851, in the twenty-seventh section, (Sess. Acts, 279,) provided a different and inconsistent mode for the recovery of penalties, and therefore repealed the sections of the act in the Revised Code which imposed the penalties and provided for their recovery by indictment. To this it was replied, that the thirty-third section of the act of March 3d, 1851, provided that, "if the county court of any county should be of opinion, that the provisions of the act should not be enforced, they might, in their discretion, suspend the operation of the same for any specified length of time, and thereupon the act should become inoperative in such county for the period specified in such order; and thereupon order the roads to be opened and kept in good repair, under the laws theretofore in force, or the special acts on the subject of roads and highways in the several counties of this state, that might take effect and be in force after the 4th of July then next." It was alleged that, under this section, the county court of Saline county made an order at the November term, 1851, suspending the operation of the act

State *v.* Field.

until the second Monday in June, 1852, and that the offence for which the defendant was indicted, was committed within the period for which the act was suspended. It was rejoined by the defendant, that the act, notwithstanding the order of the county court suspending its operation, continued in force, because the section of the act which authorized the county courts to make such order, was a delegation of legislative power to the county courts which was inconsistent with the constitution; and that, therefore, the section itself and the action of the county court of Saline county under it, were unconstitutional and void. Of this opinion was the Circuit Court, and the indictment was quashed, which decision the State now brings before this court for review and reversal.

1. Without a minute examination and recapitulation of the various provisions of the act of March 3d, 1851, it is sufficient to say, that it embraces very many of the provisions necessary to a road system. It provides the mode of laying out roads, taking relinquishments from the proprietors of lands, condemning such as the owners refuse to relinquish, and ascertaining and paying the damages thereby incurred; it designates the persons liable to work on roads, and provides for their being taxed, as well as for a tax upon property, in order to keep the roads in repair; it provides for the collection of the taxes and their disbursement, for the appointment of overseers and compelling them to serve, and for penalties to be incurred by them for neglect of duty, and for the recovery of such penalties by prescribed judicial proceedings.

On all the different points on which provision is made, it professes to be the declaration of the legislative will, and the subject it regulates is one of vast importance, not only to the people of the county, but to the people of the state at large.

Yet this act is submitted to the control of every county court, to make such order for its being in force in their county as they, in their discretion, may think proper. In other words, this act, by its own provisions, repeals the inconsistent provisions of a former act, and yet it is left to the county court to say which

act shall be in force in their county. The act does not submit the question to the county court as an original question, to be decided by that tribunal, whether the act shall commence its operation within the county; but it became, by its own terms, a law in every county not excepted by name in the act. It did not then require the county court to do any act, in order to give it effect. But being the law in the county, and having, by its provisions, superseded and abrogated the inconsistent provisions of previous laws, the county court is, by the thirty-third section, empowered, for such time as they may think proper, to suspend this act, and revive the repealed provisions of the former act. When the question is before the county court, for that tribunal to determine which law shall be in force, it is urged before us, that the power then to be exercised by the court is strictly legislative power, which, under our constitution, cannot be delegated to that tribunal or to any other body of men in the state. In the present case, the question is not presented in the abstract; for the county court of Saline county, after the act had been for several months in force in that county, did, by order, suspend its operation; and, during that suspension, the offence was committed which is the subject of the present indictment, and the indictment itself was found.

The constitution of the state, after declaring, that " the powers of government shall be divided into three departments, each of which shall be confided to a separate magistracy," proceeds to vest the legislative power of the government in these words : " The legislative power shall be vested in a general assembly, which shall consist of a senate and house of representatives." The constitution of each house of the general assembly is provided for in the constitution, the qualifications of the members, and of the electors who choose them ; the mode in which bills shall be passed and authenticated is also directed, and the machinery is complete for the exercise of the legislative power conferred upon the general assembly. The power thus conferred is the power to make laws ; and the exercise of the power is entrusted to bodies of men, who are sup-

State *v.* Field.

posed to be selected by the great body of the people entitled to vote, because of their prudence, wisdom and integrity. The laws to be passed form " the rule of civil conduct, commanding what is right and prohibiting what is wrong," and that rule derives its force from the fact, that it is the will of the whole people expressed by their authorized representatives, in the forms provided by the constitution, and on subjects or questions on which the representatives have been entrusted to act. This power, thus reaching every citizen, in every relation and every interest, is to be regarded as a sacred trust, which is to be exercised by those to whom it has been committed, and every citizen has a right to demand, that the rule for his conduct shall be established by that body, in which he, with his other fellow-citizens, have vested the power. That portions of the people are sometimes organized as municipal corporations, and are entrusted with the power of making by-laws and ordinances for the regulation of their own local and peculiar interests, and to which their assent is given in the mode provided by law, does not make an exception to the rule, that the legislative power conferred upon the general assembly is to be exercised by that body, and not to be delegated to others. The history of such corporations, their existence in the country previous to the adoption of the constitution, the principle of presumed consent to ordinances, and the uniform adjudication of courts, show that the power conferred on such corporations to pass by-laws and ordinances, subject to the laws of the state, stands on peculiar grounds, and is not a part of the general legislative power which is committed to the general assembly, to be exercised only by that body. And in the present case, the defence of this thirty-third section is mainly rested on the ground, that the power conferred on the county courts, is a power in relation to roads within the county, as cities and towns have power over their streets, and that the counties are, under our laws, *quasi* corporations, to which may be committed the power to adopt one or the other of state laws regulating roads. The fallacy of this argument will be readily perceived, by attending

to the case now before us. The defendant is indicted in the Circuit Court for a failure of duty as a road overseer; and he defends himself on the ground that, though he may be liable for his neglect of duty, and for the penalty imposed by law, yet the mode of recovering that penalty is not by indictment, but by action before a justice of the peace. The question, which mode of proceeding shall be pursued, depends on which law is in force in respect to the recovery of penalties, that of 1845 or that of 1851; and this is made to depend on the effect of an order of the county court of Saline county suspending the act of 1851, under the power conferred by its thirty-third section. If the order suspending the act is valid, and under a constitutional provision of the act of 1851, then the indictment can be maintained under the act of 1845; but if no such power to make an order could be given to the county court, then the act of 1851 is in full force, and the proceeding to recover the penalty must be before a justice of the peace. It appears impossible to doubt, that the power which has been exercised by the court under the thirty-third section of the act, and which has the effect of determining what law shall be in force in the tribunals of the state for the recovery of penalties which its own laws impose, is a part of the legislative power which cannot be entrusted to the county courts. If it can be, then this court, as well as the circuit courts, are bound by the law, as the county courts may have chosen between the different acts, and not only in the county of Saline, but in every other county not excepted in the act, there may have been at different times, the one or the other of the different laws in force, as the county courts may have indicated by their orders. So that the orders of those courts are to be produced in the circuit courts, and even in this, not to prove facts, but to show the law which we are to administer. This bears a very strong resemblance to the exercise of legislative power by the county courts. In the case of *Parker* v. *The Commonwealth*, 6 Barr, 507, the question came before the Supreme Court of Pennsylvania, whether an act giving to the citizens of certain counties, the

State *v.* Field.

power to decide by vote, whether the sale of vinous or spiritu-
ous liquors should be continued within such counties, and im-
posing a penalty for the sale of such liquors, where a majority
of the votes had been against such sale, was constitutional or
not? Upon this question a very long and able opinion was
given by Mr. Justice Bills, in which, after a review of the his-
tory and character of our constitutional representative govern-
ment, he examines the extent of the grant of " the legislative
power to a general assembly, to consist of a senate and house
of representatives." After settling the extent of the grant, he
proceeds to show that the legislative power and the responsibi-
lity for its correct exercise, is with the general assembly, and
that they cannot, consistently with their obligations, delegate
it to any other persons, whether it be to other individuals or a
portion of the people, or the whole collected mass of the peo-
ple of the state. Applying the principles thus declared to the
law then under consideration, it is held to be unconstitutional
and void, although it was said to be a law which engaged the
feelings, and had the support of a large number of the best
and most influential citizens.

The difference between the statute which was before the Su-
preme Court of Pennsylvania and that now under considera-
tion is, that the entire act there depended, for its force in any
county, upon the popular vote being cast in its favor at the
polls, without which it was not to be binding as a law ; while
the act before us, being in its own terms the expression of the
judgment and will of the legislature, allows, by its thirty-third
section, the judgment and will of a county court to set aside
that of the legislature and adopt a different rule. The differ-
ence between the two acts is more in form than substance. The
question passed upon by the voters in Pennsylvania was,
whether a law previously existing, which authorized the issuing
of licenses for the sale of liquor, should be suspended for a
year, so that no license during that time should be issued ; and
as the majority of voters determined, the law was or was not
in force. The question in our act which is to be passed upon

State *v.* Field.

by the county court is, whether the new act shall be suspended and the old act revived, and if so, for how long a period. In *Rice* v. *Foster*, 4 Harrington, 479, the same questions are considered by the court of appeals of Delaware, in relation to an act which, in principle, was precisely like the Pennsylvania act, and the court decided that it was an unconstitutional attempt to delegate the legislative power which had been entrusted to the general assembly, and therefore void. The opinions delivered by the judges enter at large into the consideration of the nature of the powers entrusted to the legislative department, and enforce the duty of the legislature to exercise the powers upon their own responsibil'ty. It is clearly shown, that the power, thus committed by the people into the hands of their constitutional representatives, is not to be delegated to others not trusted by the people; nor is it within the contemplation of the constitution, that the representatives shall attempt to yield up the power to any portion of the people themselves. It would be easy, by quoting from these and similar decisions in other states, to extend appropriate remarks upon the grant of legislative power in the constitution, and the impropriety and danger of its delegation to any other body of men, to very great length; but it is the province of the court to decide the case upon the principles involved in it, and not to write political essays.

It is the opinion of the court, that the thirty-third section of the act of March 3d, 1851, is unconstitutional and void, and that the action of the Saline county court had under that section, by which the act was suspended, was void, and therefore that the act itself was, at all times, from its first taking effect, in force in Saline county. As its provisions for the recovery of the penalty against the defendant are inconsistent with the provisions of the law under which he was indicted, and therefore repealed that law, the indictment was rightly quashed by the Circuit Court, and its judgment is, with the concurrence of the other judges, affirmed.