JAMES W. McGHEE et al., Appellants, v. MICHAEL WALSH, COMMERCE TRUST COMPANY and KANSAS CITY.

In Banc, April 8, 1913.

1. CHARTER OF KANSAS CITY: Superseded Existing Statutes. The freeholders' charter of Kansas City adopted September 4, 1908, when it went into effect automatically superseded the statutory provisions for the government of cities of the class into which by its population the Legislature had placed that city; subject, however, to the limitation that its provisions should be in harmony with the Constitution and laws of the State.

2. CITY CHARTER: Validity of Statute: Unconstitutionality. The provisions of the freeholders' charter of Kansas City are to be regarded as having the same force as if they had been enacted into a statute by the General Assembly. They may be invalid for the same reason that a statute may be unconstitu- tional.

3. ———: District Sewer District: Alteration. The charter of Kansas City permits the city to subdivide, enlarge or change,

by ordinance, any sewer district previously established, at any time prior to the construction of a district sewer therein; but thereafter, and automatically by the terms of the charter, the city's right to enlarge, change or subdivide a sewer district ceases.

4. ————: **Alteration of Sewer.** But the city is given power by its charter to construct any needed additional sewers within the district, and to change, enlarge or extend any existing sewer, and to add laterals, inlets and other appurtenances.

5. ————: **Sewer District: Establishment: Legislative Matter: Collateral Attack.** The matter of establishing sewer districts in Kansas City is intrusted to the municipal assembly, and its action is conclusive in a collateral attack.

6. ————: **Sewers: Assessment of Costs: Area Rule.** The whole cost of any sewer constructed within a sewer district, and of any addition thereto, or any alteration therein, at any time, under the charter of Kansas City, may be apportioned against the lands within the district according to the area rule, and that means that all the lands within the district may be assessed with the costs of any such improvement.

7. ————: ————: ————: **Due Process of Law.** If before the organization of the sewer district notice and opportunity were given to the land-owners to be heard by the Board of Public Works, which, by the Kansas City charter, is the tribunal having in hand the duty of ascertaining the facts and acting in the matters leading up to the special assessment of the costs of the construction of a district sewer, then there was also present the due process of law required by the Constitution.

8. **SEWER CONSTRUCTION: No Benefit: Valid Tax Bill.** The common council of Kansas City has power, under its charter and the laws and the Constitution, to establish a district sewer district, and to include therein lands of plaintiffs, and to assess those lands, according to the area rule, with their share of the costs of constructing sewers therein; and the collection of special tax bills issued against those lands will not be enjoined or the tax bills cancelled, although those lands, after the sewers have been constructed, lie below the bottom of the sewers, and cannot now or at any time be drained by them, and the sewers are of no direct benefit to such lands—the sewer district being unchangeable, and there being present the solemn charter promise to later provide an adequate sewer system for plaintiffs' lands at the expense of all the lands in the district. The law does not require that each property-owner must be benefited by each sewer constructed. Sewers may be constructed at different times. It will be assumed that the city, at the proper time, when the necessity thereof becomes

incumbent, will perform its duty of constructing sewers that will drain plaintiffs' lands, and that they will be paid for by assessments on all the lands in the district, though they may be of no direct benefit to the lands within the district drained by the sewers already constructed; and especially should this assumption be made, and plaintiffs' land be charged with their share of the costs of the present sewer, when, owing to a marked slope in the lands of the district and the much rock to be excavated, an adequate sewer system for all the lands can, by separate sewers, be provided at much less cost to the district as a whole.

9. ————: ————: **Reciprocal Benefit.** Nor is it true that plaintiffs' lands are not benefited though they lie below the bottom of the sewer. The vested right to reciprocal contribution from other land-owners, whenever sewers are needed in plaintiffs' lands, is of itself a benefit within the purview of the rule that no assessment may be made without benefits accruing. That holding finds strength in two things: first, in the charter provision that the boundaries of the existing district cannot be changed; and, second, in the assumption that the city officials will severally perform their duties rightly, and will, whenever, because of increase in population and buildings in the district, necessity may require it, construct additional sewers, or enlarge and extend existing ones, to care for plaintiffs' lands not now sewered.

10. ————: ————: **Collateral Attack.** The contention that assessment of costs against plaintiffs' lands in the sewer district for the construction of a sewer which does not drain those lands is depriving them of their property without due process of law is, in its final analysis, an assertion that the action of the municipal assembly, in establishing the district so as to include their lands, was unreasonable and oppressive; and that attack cannot be made in a collateral proceeding, such as an injunction to cancel and enjoin the collection of the special tax bills.

11. ————: ————: **Due Process of Law: Notice.** Where some of the territory in the sewer district is sparsely settled, and much is vacant; it is physically impossible to build all the sewers over all the district at the same time, and there is no immediate necessity for that, though the city is rapidly growing; there is a charter provision declaring that the boundaries of a district cannot be altered after a sewer is constructed, but can be before such construction; notice, fully describing the boundaries of the proposed district was given, in the manner provided by the charter, to all property-owners interested to appear and "present their views in respect to the proposed improvement," and thereafter the district was established includ-

ing plaintiffs' lands, which lie below the bottom of the sewers first constructed, and to pay whose costs the tax bills in suit were issued, it will be presumed that the city officials acted rightly, and that they will continue, as necessity arises, to construct other sewers, and charge the costs thereof against all lands in the district, and if they do that, the assessments for the sewers already constructed, are, in a sense, but installments paid on a comprehensive system of sewerage made necessary by existing exigencies, and the present assessments are not, therefore, without reciprocal benefits, and hence plaintiffs are not about to be deprived of their property without due process of law in such wise as to violate section 1 of the 14th Amendment to the U. S. Constitution.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie*, Judge.

AFFIRMED.

*L. A. Laughlin* for appellants.

(1) The theory upon which local assessments for improvements are made in this State is that a special and peculiar benefit is conferred upon the property assessed different from that conferred upon the general public. It follows as a necessary corollary of that proposition that the assessment cannot exceed the special benefit. The burdens of the whole community cannot be shifted to the shoulders of one man, who has only an interest in common with all the rest. , The whole theory of local taxation or assessments is, that the improvements for which they are levied afford a remuneration in the way of benefits. A law which would attempt to make one person or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation. In effect it would be transferring the property of one individual to another. McCormack v. Patchin, 53 Mo. 36; Kiley v. Cranor, 51 Mo. 542; Zoeller v. Kellogg, 4 Mo. App. 168; Heman Const. Co. v. Railroad, 206 Mo. 177. The tax bill here sued on is

not regarded as a tax but as an assessment for improvements, and is not considered as a burden, but as an equivalent or compensation for the enhanced value which property derives from the improvement. Sheehan v. Hospital, 50 Mo. 155; St. Louis v. Allen, 53 Mo. 44; Wewell v. Cincinnati, 45 Ohio St. 424; Norwood v. Baker, 172 U. S. 269. (2) Land which can be drained by a sewer or drain can alone be deemed to be benefited by its construction. Bennett v. Emmetsburg, 138 Iowa, 67; Lawrenceville v. Hennessey, 244 Ill. 464; Lawrence v. Grand Rapids, 131 N. W. (Mich.) 581; Railroad v. Portland, 25 Ore. 229, 22 L. R. A. 713; Paulson v. Portland, 16 Ore. 450; Gilmore v. Hentig, 33 Kan. 156; Hanscom v. Omaha, 11 Neb. 37; People ex rel. v. Rochester, 5 Lans. (N. Y.) 15. In assessments for the construction of sewers, it is usually provided that land benefited by the sewer shall be assessed for the construction thereof. This includes in the assessment district, land which receives an especial benefit from the construction of the sewer. Hungerford v. Hartford, 39 Conn. 279; Clapp v. Hartford, 35 Conn. 66; Chicago v. Adcock, 168 Ill. 221; Appeal of Wheeler, 80 N. Y. Supp. 204. And ordinarily means the land which can be drained by the sewer for the cost of which the assessment is levied. Duane v. Chicago, 198 Ill. 471; Mason v. Chicago, 178 Ill. 499; Butler v. Worcester, 112 Mass. 541; Warren v. Grand Haven, 30 Mich. 24. Land which is so located that by reason of the slope of the ground it cannot drain into the ditch in question is not benefited thereby. Klinger v. People ex rel., 130 Ill. 509; In re Van Buren, 79 N. Y. 384; State v. Pillsbury, 82 Minn. 359; Chicago v. Adcock, 168 Ill. 221; Zinser v. Buena Vista Co., 137 Iowa, 660. (3) No assessment can be levied against land which will be benefited by a sewer only if the sewer is extended. Bickerdyke v. Chicago, 185 Ill. 280; Title Guar. & Tr. Co. v. Chicago, 162 Ill. 505; Vreeland v. Mayor, 58 N. J. L. 126; Hutt v. Chicago, 132 Ill. 352;

Edwards v. Chicago, 140 Ill. 440; Clark v. Chicago, 214 Ill. 318.  The ordinance projecting this improvement contemplated nothing beyond the construction of the sewers which had been built.  No ordinance has been passed or proposed, for an extension or connecting sewer, which in its operations will benefit the prosecutors' lands by draining them:  Such connections may never be made.  The authorities who may have the control of public affairs, may never conclude to construct a sewer for the drainage of the prosecutors' land, and if they do they may locate it in such a way that its connections may not be with the present sewer.  It is manifest that a probability depending on so many contingencies will have no appreciable influence on the value of the lands on which the burden is imposed and therefore is not an equivalent for the moneys which the prosecutors are required to disburse under this assessment.    Railroad v. Elizabeth, 8 Vroom (N. Y.), 330.  To impose a present lien and obligation to pay where the special benefit is future and contingent on the will of the municipality, would be a clear violation of the fundamental basis on which all such assessments rest.  Appeal of Parker, 169 Pa. St. 433; Beechwood Ave. Sewer Cases, 179 Pa. St. 490; Kansas City v. Railroad, 230 Mo. 369.   (4) ·Our courts will enjoin the collection of a special assessment where no benefit is conferred.  Corrigan v. Gage, 68 Mo. 541; Halpin v. Campbell, 71 Mo. 493; St. Louis v. Richeson, 76 Mo. 485.  When it appears that an ordinance passed in pursuance of such power is the creature of fraud or is the product of legislative whim or caprice merely, and in violation of common right, imposing a burden upon the citizen without any corresponding benefits to him, or the community of which he is a constituent, the courts will interfere for his protection.  In other words, while the courts may not interfere with the legitimate use of legislative power, delegated to a municipal corporation, they may inter-

fere to prevent its abuse. Skinker v. Heman, 148 Mo. 355; Hudlmeyer v. Dickinson, 143 Mich. 250; Dillon's Mun. Corps. (5 Ed.), sec. 589; Cooley on Taxation, p. 428; Allen v. Drew, 44 Vt. 174. And even where the power to legislate on a given subject is conferred on a municipal corporation, yet if the details of such legislation are not prescribed by the legislation, there the ordinance passed in pursuance of such power must be a reasonable exercise thereof, or it will be pronounced invalid. St. Paul v. Colter, 12 Minn. 41; Dunham v. Rochester, 5 Cow. 462; State v. Belvidere, 44 N. J. L. 350; Hawes v. Chicago, 158 Ill. 653; Wistar v. Philadelphia, 80 Pa. St. 505.

*Lathrop, Morrow, Fox & Moore* and *Clarence S. Palmer* for respondents.

(1) In the absence of fraud the establishment of sewer districts is determined solely by the mayor and common council with the approval of the board of public works. Sec. 7, art. 8, Kansas City Charter; Johnson v. Duer, 115 Mo. 266; Heman v. Schulte, 166 Mo. 417; Meier v. St. Louis, 180 Mo. 531; Webster v. Fargo, 181 U. S. 912; Prior v. Construction Co., 170 Mo. 439; French v. Asphalt Co., 181 U. S. 324. (2) All the land in a sewer district is assessable for the cost of sewers, although the sewers built at one time do not directly furnish drainage for the entire district. Heman v. Schulte, 166 Mo. 417; Prior v. Construction Co., 170 Mo. 439; St. Joseph ex rel. v. Gibson, 110 Mo. 455. (3) The continuation of sewers, by making sewer district 305 unchangeable, conferred a benefit on all the land in the district. Sec. 7, art. 8, Kansas City Charter; Parsons v. Dist. of Columbia, 170 U. S. 45.

FARIS, J.—Suit in equity, brought in the circuit court of Kansas City, by James W. McGhee and eighty-two others, similarly situated and affected, as plaintiffs, against Michael Walsh and the Commerce

Trust Company, as holders of certain tax bills which were issued against plaintiffs and made liens on their property, for the construction of sewers in Sewer District No. 305 of said city, to enjoin the sale and transfer and to cancel said tax bills.

Plaintiffs are the owners of certain parcels and lots of real estate, situate in said Kansas City in Oliver Park Addition, Niagara Place and Warder's Addition thereto, and lying within the sewer district aforesaid.

The tax bills in question amount, in the aggregate, to $7313.04, out of the total of $59,910.37, issued for the whole work as done when the action was begun. Defendant Walsh obtained the tax bills for doing the work of constructing the sewers; the manner in which defendant Commerce Trust Company got them, or part of them, is not disclosed, nor is it pertinent.

The further facts, history, chronology and the bone of contention, are these:

On May 7, 1909, Kansas City, acting under authority of section 7, article 8, of the charter, established Sewer District No. 305. By Ordinance No. 3524, approved December 10, 1909, the construction of the sewer in question was authorized. The resolution of the Board of Public Works providing for the construction of the sewer in question was adopted May 25, 1909. June 11, 1909, was fixed as the date of hearing concerning the proposed improvements, when any and all property-owners interested in such improvements might, by written petition or otherwise, present their views regarding the improvement. The resolution and the notice of the date of hearing were duly published in the paper doing the city printing from May 30 to June 10, inclusive, 1909. After the hearing the board determined that said improvements should be made, and the contract was awarded to Michael Walsh, one of the respondents. There seems to be no claim that

249 Mo.—18

the proceedings were not taken in accordance with the charter of Kansas City, nor is there any claim that the work was not done in accordance with the contract. The facts upon which appellants rely are all stated in this brief paragraph of the petition:

"That all said lots or parcels of land owned by plaintiff lie below the bottom of the sewers constructed by defendant Walsh under said ordinance 3542 and cannot be drained into said sewers, and all of said sewers are of no benefit whatever to the lots or parcels of land owned by the plaintiffs."

Defendants contended in the court below, and contend here, that the petition answers itself when it alleges that the sewer district was created by city ordinance and that proceedings in accordance with the charter were taken to construct the district sewer, yet in addition to those facts, the record discloses alleged engineering reasons why it was not only proper, but the only reasonable thing to do, to construct sewers at the time this work was done only in the west part of the district, and to leave the property upon the streets where plaintiff's lots are located to be taken care of by subsequent sewers.

Appellants offered in evidence an ordinance describing a former sewer district, No. 252; the ordinance establishing the district was excluded by the court, but appellants make no special complaint of this action. It appears that the most easterly line of Sewer District 252 coincided with the easterly city limits as existing prior to the extension in 1909. Sewer District 305, as created, lies on the west side of the slope of a water-shed, the drainage line of which runs practically north and south. Prior to the extension of the city limits, which occurred April 6, 1909, and the case involving the authority for which is reported in State ex inf. v. Kansas City, 233 Mo. 162, there was only a narrow strip between the eastern line of a little stream running through this low ground and the eastern city

limits, and at the time of the passage of, the original ordinance in 1903, it was deemed advisable to include the tract up to the city limits for part of the eastern boundary of the district. After the extension of the city limits, however, the council created the present sewer district 305, with its eastern line following generally the lowest point of the watershed and extending up the hill westerly, so that there was a large difference in the elevation between the eastern and western boundaries of the district. The district also sloped to the south. The record shows that prior to the commencement of the proceedings for the construction of the sewer in question a joint-district sewer had been built following generally the line of the stream on the east side of sewer district 305. With the development of the city this joint sewer had become inadequate, and the expert testimony of the engineers shows that a larger joint-district sewer was necessary. It seems that under the Kansas City charter, joint-district sewers are paid for by the land in the different sewer districts which are united to form the joint-sewer district, and that there was a tract of about 260 acres of land which lay outside the old city limits, but within the new city limits, which could properly be assessed for a proportional cost of the new joint-district sewer. While the extension of the city limits occurred in 1909, yet litigation attacking the validity was begun and was not decided until March 2, 1911, by the Supreme Court. While this litigation was pending contractors would not take substantial contracts involving that question. It was, it is urged, therefore impracticable for the city to build a larger joint-district sewer without leaving out of the assessment this tract of land of 260 acres. In the meantime the western part of this district was being built up so that sewers were needed; the council therefore passed an ordinance providing for the construction of sewers except on two or three streets lying on the eastern bor-

der of the district, and on which streets is situate the property of plaintiffs; those streets were left for future action of the council.

The record also shows that the rock encountered in the construction of sewers in the eastern part of this sewer district was especially hard to excavate. It shows the judgment of an engineer of the city engineering department, of eleven years service, that the method taken of including the whole territory in Sewer District No. 305, and in building part of the sewers at that time and leaving the remainder to be taken care of as needed, was cheaper for the property-owner than to have made two districts out of the present territory of district 305. It was in evidence by defendant that proper engineering would require that the discharge of the sewers from the part of the district not sewered at that time was properly into the new joint-district sewer which was not then constructed, and that if an attempt were made to discharge into the creek, instead of the new joint-district sewer, the outfall would be carried across private property. There was evidence tending to show that the sewers which were constructed took care of part of the surface water that formerly came down on to the property at the bottom of the ravine. While this fact was disputed by the witnesses, yet the testimony of the engineers, and the laws of gravity, the lay of the land regarded, make it probable that this was a fact. This testimony was introduced to explain the engineering reasons why the plan was worked out in the present way, instead of some other way to suit the theory of plaintiffs.

The case was tried in the lower court on July 1, 1911, and the court found for the defendants and entered judgment accordingly. From this judgment plaintiffs have appealed, alleging both in the petition and the motion for a new trial, that the special taxbills were issued in violation of section 30, article 2, of

the Constitution of Missouri, and of section 1 of the 14th Amendment to the Constitution of the United States.

I.  It is contended by appellant "that all of the lots or parcels of land owned by plaintiffs lie below the bottom of the sewers constructed by defendant Walsh under said ordinance 3542, and cannot be drained into said sewers, and all of said sewers are of no benefit whatever to the lots or parcels of land owned by plaintiffs." Defendants, by answer, frankly admit the truth of all this, except matters of benefits, which they say accrue indirectly, and generously add the further admission that no sewers can be constructed which will afford to plaintiffs drainage facilities, without prohibitive and unreasonable cost, until a joint sewer is built.

So much being admitted, plaintiffs say that to en· force against them the taxbills in question would be to violate section 30, article 2 of the Constitution of Missouri of 1875, and section 1 of the 14th Amendment to the Constitution of the United States.  Defendants urge that such result is a legal *non sequitur,* for the reasons (1) arising upon the facts; that (a) the sewer districts are by the charter of Kansas City fixed and unchangeable, like the laws of the Medes and Persians; that (b) a similar sanitary and storm sewer system as now enjoyed by the west part of District 305, will be, when and as soon as feasible, provided for the east part of the district where plaintiff's property lies; that (c) a joint sewer will be necessary and is in actual contemplation, and the same will be paid for by the whole of District 305 and the adjoining benefited district; that (d) such sewers will be provided for plaintiffs when this can be done without unreasonable and prohibitive cost, which sewers, though solely for the use and benefit of plaintiffs, *will be paid for by the whole of District 305,* and that under this state of

facts, absent fraud, the legal reason (2) concludes plaintiffs, viz.: ''That under the law the establishment of sewer districts is determinable solely by the mayor and common council, with the approval of the Board of Public Works.''

The provisions of the charter of Kansas City, which furnish the authority under which said city acted in establishing Sewer District 305, and which provides the scheme and method of assessing and apportioning the costs of the construction of sewers therein, are found in section 7, article 8, which is as follows:

''Sec. 7. District sewers shall be constructed or reconstructed within the limits of the district heretofore or hereafter established by ordinance, as the case may be. Any sewer district heretofore or hereafter established may be subdivided, enlarged or changed by ordinance at any time previous to the construction of any district sewer therein. But no such district shall be subdivided, enlarged or changed after a district sewer shall have been constructed therein. The city may, with the approval of the Board of Public Works, from time to time, cause a district sewer or sewers to be constructed or reconstructed in any sewer district heretofore or hereafter established, and such sewer or sewers shall be as shall be prescribed by the Board of Public Works and confirmed as herein required by ordinance. Any district sewer heretofore or hereafter constructed, may be changed, diminished, enlarged or extended, and shall have such laterals, inlets and other appurtenances as may be prescribed by the Board of Public Works and confirmed by ordinance. As soon as the work of constructing, changing, diminishing, enlarging, or extending any district sewer shall have been completed under a contract let for the purpose, the Board of Public Works shall compute the whole cost thereof, and apportion and charge the same as a special tax against the lots of land in the district, exclu-

sive of the improvements, and in the proportion that their respective areas bear to the area of the whole district, exclusive of streets, avenues, alleys and public highways, and shall, except as in this article provided, make out and certify in favor of the contractor or contractors to be paid, special taxbills for the amount of the special tax against each lot or parcel of land in the district. The city shall in no event, nor in any manner whatever, be liable for or on account of the cost of work done in constructing, changing, diminishing, enlarging or extending any district sewer, except as in this article provided.''

That no benefits whatever have accrued, or can directly accrue from the construction of the identical sewers, in payment for which the taxbills attached here were issued, stands conceded upon the record, or is proven in the case, save and except only such small benefit as flows from the diversion through the storm sewers already built, of some small portion of the surface water, which theretofore flowed from the drained dominant estate over the servient estate

**Sewer: No Benefit.** of plaintiffs. Without discussion, it may be perhaps accepted as true, that the relief afforded is infinitesimal and out of proportion to the sums severally assessed against the plaintiffs' property. We take it from this fact alone, that fairness will not permit of a finding for defendants. An excuse in law must be found bottomed on sounder and more equitable premises. It must be held that the municipality, from its charter right to establish immutable sewer districts, has the right to tax property presently, and by the improvements presently made, unbenefited in any wise, by virtue of the solemn charter promise to latterly provide an adequate sewer system for plaintiffs and others similarly situated, at the expense of the whole of the property in District No. 305. It must be based, in other words, upon a sort of reciprocal taxation, whereby the east part of the district is

now taxed without appreciable benefit accruing, which taxation is subsequently to be compensated by the taxing of the west part of the district, likewise without benefits accruing. If the law will permit this; the existing conditions; the unalterable establishment of the district's boundaries; the physical impossibility of doing all the work at one instant of time; the presumptions indulged in favor of right acting of officers, and the equities in the last analysis, all regarded; then the judgment should be for defendants.

The city of Kansas City is organized under a special charter pursuant to the provisions contained in the organic law (Sec. 16, art. 9, Constitution), and the statutory authority conferred by an act of the General Assembly, approved March 10, 1887 (Laws 1887, pp. 42-51), and divers amendments thereto, subsequently passed. The charter under which this city is now working, was adopted and went into effect September 4, 1908. By the statute such charter when it went into effect automatically superseded the statutory provisions for the government of cities of the class into which by its population the Legislature had placed Kansas City (Sec. 6360, R. S. 1899); subject, however, to the limitation, that the provisions of such charter should be in harmony with the Constitution and laws of the State. [Sec. 6359, R. S. 1899.]

Freeholders' Charter.

That such is the legal effect of the adoption of such a charter, aside from the statute (which is lucid and clear), has been judicially determined by this court in several cases which came before us. [Kansas City v. Marsh Oil Co., 140 Mo. l. c. 471; St. Louis v. DeLassus, 205 Mo. l. c. 585; St. Louis v. Liessing, 190 Mo. l. c. 480.] In the case of Kansas City v. Marsh Oil Co., supra, it was said by the court:

"A charter is the organic law of a city in this State, whether it emanate from the General Assembly, or is framed and adopted by the people of the munici-

pality by authority of the Constitution. Being a law for the government of the municipality, it is binding upon all courts, and it violates no principle of our government to say that the courts, when called upon, must enforce these municipal laws unless they conflict with the Constitution, and are not in harmony with the Constitution and laws."

The further objection inevitably arising, that such a power conferred upon the people of a city may be in violation of the rule or maxim that legislative power is not delegable, has been answered in the negative by this court, in so many cases that in this State the question may be regarded as settled. [Metcalf v. St. Louis, 11 Mo. 102; State v. Field, 17 Mo. 529; State ex rel. v. Francis, 95 Mo. 1. c. 49; Morrow v. Kansas City, 186 Mo. 1. c. 683; Sluder v. Transit Co., 189 Mo. 1. c. 128.]

This court, in the case of Morrow v. Kansas City, supra, said:

"The power to grant these municipal charters was nowhere expressly granted in either the Constitutions of 1820 or 1865, but was upheld on the ground that it fell within the general grant of the legislative power, which was plenary, save where restricted by some constitutional prohibition, and as there were no such inhibitions, it was construed to be an unquestioned and continuing power.

"The powers of legislation conferred upon these municipal corporations to regulate and manage their local municipal affairs in conformity to ordinances adopted by themselves, were held no infringement upon the maxim that legislative power could not be delegated."

These considerations lead us to the conclusion that the provisions of section 7 of article 8 of the charter of Kansas City of 1908, are to be regarded as having the same force as if they had been enacted into a statute by the General Assembly of the State. As a statute passed by the General Assembly may be un-

constitutional, so also may a provision of the charter of a city likewise be, in a sense, unconstitutional.

The sewers in question, and in payment for which the tax bills involved were issued, are "district sewers," as distinguished from other classes of sewers provided for by section 5 of article 8 of the city charter. The provisions of the latter section may be pertinent to an understanding of the provisions of section 7 of the charter, and as indubitably fixing upon the facts, the status of the sewers here involved, as "district sewers." Said section says:

Sewer District.

"The general sewer system of the city shall be divided into four classes, to-wit: Public, district, joint district and private sewers. The city may, by ordinance, find and determine the class to which any sewer belongs, and the finding and determination of the city in that respect shall be final and conclusive."

In the instant case the ordinance passed by the city designated the sewers about which this case revolves, as "district sewers."

Analyzing section 7 of the charter, we see that the right is conferred upon the city acting through its legislative branch, to subdivide, enlarge or change by ordinance, any sewer district heretofore or hereafter established, up to and until a district sewer shall have been constructed in such district. Immediately upon the construction of *any district sewers in such district*, and automatically thereupon by the terms of this section, *the right to enlarge, change or subdivide a sewer district ceases.* For, continuing, this section says: *"But no such district shall be subdivided, enlarged or changed after a district sewer shall have been constructed therein."*

By the further provisions of section 7 of the charter, the city (by ordinance) with the approval of the Board of Public Works, may cause all necessary sewer or sewers to be constructed in a sewer district, and any

district sewer theretofore constructed, may be changed, enlarged, or extended with such laterals, inlets and other appurtenances as may be prescribed by the Board of Public Works, and confirmed by ordinance. When any such work of constructing, changing, enlarging or extending a sewer or sewers is completed, the Board of Public Works is required to compute the whole cost thereof and apportion and charge the cost thereof against all of the parcels of land in the district (exclusive of improvements) upon the basis of what is called the "area rule." The validity of an assessment made upon the "area rule." is not questioned here; *per contra,* it is urged, that an assessment of plaintiffs upon any rule for the sewers in question, would be to deprive them of their property without "due process of law."

It is well-settled in this State that the matter of establishing sewer districts in a city is intrusted by the Legislature to the common council thereof, and that the action of such common council is conclusive in a collateral attack. [Johnson v. Duer, 115 Mo. l. c. 376; Heman v. Schulte, 166 Mo. l. c. 417; Meier v. St. Louis, 180 Mo. l. c. 409; Prior v. Construction Co., 170 Mo. l. c. 448.]

In the case of Prior v. Construction Co., supra, MARSHALL, J., speaking for this court, In Banc, and in an opinion in which all concurred, said: "The constitutionality of charter provisions providing for the construction of streets, alleys, or sewers, and charging the cost of such construction proportionately upon all property abutting the improvement or within the established benefit district, either according to the front-foot rule or according to the area rule. is no longer open to debate. All such questions have been settled by the decisions of this court and those of the Supreme Court of the United States. [St. Louis v. Oeters, 36 Mo. 456; Kansas City v. Ridenour, 84 Mo. 253; St. Joseph v. Owen, 110 Mo. 445;

Heman v. Allen, 156 Mo. 534; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; Hill v. Swingley, 159 Mo. 45; Schumate v. Heman, 181 U. S. 402; French v. Barber Asphalt Paving Co., 181 U. S. 324.]''

And in the case of Meier v. St. Louis, supra, likewise an opinion In Banc in which all concurred, GANTT, J., said: "It is now the settled law in this court that special assessments for local improvements are referable to the taxing power. [Garrett v. St. Louis, 25 Mo. 505; Heman v. Allen, 156 Mo. 534; Barber Asphalt Co. v. French, 158 Mo. 534; Ibid. v. Ibid., 181 U. S. 324.] It is within the power of the Legislature to create special taxing districts, and to charge the cost of a local improvement, in whole or in part, upon the property in said districts, either according to valuation or superficial area or frontage. [Webster v. Fargo, 181 U. S. 394; Prior v. Construction Co., 170 Mo. 439; Asphalt Co. v. French, 158 Mo. 534; Spencer v. Merchant, 125 U. S. 345; Egyptian Levee Co. v. Hardin, 27 Mo. 495.]''

Present, notice and opportunity to be heard before the Board of Public Works as was given to the plaintiffs, by the tribunal having in hand

**Due Process of Law.**

the duty of ascertaining the facts and acting in the matters leading up to and in the special assessment procedure, there is also present that "due process of law" required by section 30 of article 2 of our Constitution. [Meier v. St. Louis, supra; Gist v. Construction Co., 224 Mo. l. c. 392.]

The Common Council of Kansas City in the exercise of a right, which, in the case at bar, was intrusted solely to such council, has seen fit to establish Sewer District 305 and to include the property of plaintiffs therein. The whole case of plaintiffs, in the last analysis, is referable to the correctness of this action. The illogical results of an interference in a proper case will be seen, when we regard the

physical and topographical situation. The proof shows that at certain places rock of a most refractory sort, difficult and costly to excavate, exists; that there is a varying broken slope both toward the east and southeast, and that within the boundaries of the sewer district as formed, the height of the land varies from 220 feet at the highest point to sixty feet at the lowest point.

No hardships upon plaintiffs in the ultimate working out of the scheme of building sewers in District 305, as established by the council, can occur. The council by ordinance, with the approval of the Board of Public Works, may build new district sewers and enlarge and extend those already built. When such sewers which are now constructed are extended, and when new sewers for the use, and it may be for the sole benefit of plaintiffs, are constructed, the cost thereof will be borne by the entire property in the district, according to the ''area rule;'' in other words, *all of the sewers constructed in the district will, and must be paid for by assessment against all of the property in the district.* In the last analysis, no other rule is feasible or sensible. If we concede that as a matter of law each property-owner must be specifically benefited by each sewer, then the power to extend a sewer is futile. The moment a sewer is extended the benefits to property in the district already sewered would cease and no legal right to extend would exist. The city would, in effect, be compelled to build and complete every part of a finished and complete and final sewerage system at the identical instant of time—a thing not possible in practice.

If we presume, as we must, that the Common Council of Kansas City and the Board of Public Works thereof will perform the duties enjoined upon them when those duties shall, by public necessity, become incumbent, we must conclude that at the proper time sewers will be constructed for plaintiffs' sole be-

hoof; which sewers will be paid for by the whole district, and no hardship to plaintiffs will ensue.    We must assume that as the necessity of the case becomes equal to the expenses entailed, sewers will be constructed as such necessity requires, and *at the expense of the whole district*.    Indeed, circumstances may be conceived wherein any other view would itself be unreasonable and confiscatory.

As was said touching a similar case, that of St. Joseph to use v. Owen, 110 Mo. l. c. 454: "Circumstances will readily suggest themselves where an ordinance for the construction of a sewer would justly be regarded as most unreasonable, which should require a sewer to be constructed throughout the entire district, regardless of the needs of the district, or whether portions of the same were inhabited, or indeed uninhabitable.    We see nothing in the charter requiring us to give it such an extreme construction.    The burdens of the taxpayers are not one whit increased by the construction of the character here suggested; he simply pays, as does his neighbor, by the front-foot or 'area rule,' authorized by the charter, a rule quite recently approved in the case of St. Joseph v. Farrell, 106 Mo. 437."

We conclude, therefore, that the assessment of benefits against plaintiffs, whose property is presently benefited by the sewers in question, only in that some part of the surface water formerly flowing from the dominant estate over the lands of plaintiffs is now diverted through the sewers, cannot be assailed upon the facts in the instant case, for the reason that a contrary view inevitably takes us back to the reasonableness and fairness of the action of the Common Council in establishing Sewer District 305.    This matter of establishment of such districts, as we have seen, is intrusted to the common Council by the Legislature, and the settled rule of law in this State is that the action of the Common

Collateral
Attack.

Council in establishing such districts is not subject to collateral attack. The rule in a large majority of other jurisdictions would seem to be otherwise. [1 Page & Jones on Taxation by Assessment, pp. 896, 902, 980; Ellwood v. Rochester, 122 N. Y. 229; Hamilton on Special Assessments, secs. 602-603.] When we regard the whole of the facts here; when we consider that the boundaries of the district and the area therein cannot be enlarged, diminished or changed by any act of the city; that under the proof, the plan devised was the only feasible one; that the adoption of any other scheme would have been, as to cost thereof, unreasonable and prohibitive; that as plaintiffs' lots now pay a part of the costs of sewers therein, the benefits accruing to them are negligible; so will the lots of those in the western part of the district be compelled to bear a part of the costs of sewers, from which, in turn, their owners obtain no benefits; can it be said that from such a scheme and system, benefits do not accrue? Is not the vested right to reciprocal contribution, whenever and as soon as sewers are needed in the presently taxed but unsewered part of the district, in itself a benefit within the purview of the rule that no assessment may be made without benefits accruing? But for the provision that after a sewer has been constructed, no change in the district's boundaries may be made, we would of necessity say that plaintiffs cannot be taxed. With this provision, however, indulging, as we must, the presumption that the Common Council and the Board of Public Works will severally perform their duties rightly, and that these officers will, whenever, by increase of population or by the upbuilding of the district, necessity may require, construct and extend and enlarge the sewers of the district so as to properly care for the lands of plaintiff not now sewered, can we say that the action of the council was unjust, unreasonable, oppressive, or subversive of the rights of plaintiffs? We think not. Any

Sewers as
a Unit.

other view, the immutable clause of the charter considered, would, in the last analysis, lead to an absurdity. For convenience, certain parts of the city are, by the best judgment of the Common Council, the city engineers so advising, presumably, cost and outlet and topography considered, found to be adapted for improvements as a unit. The council by solemn ordinance so ordains such territory, for cheapness and convenience of improvement, into a sewer district. If every lot owner must, as a condition precedent to assessment, draw some benefit from every line of sewer, then by the same token some benefit should enure from the laying of each section of sewer pipe. No lateral structures could be built; for any property owner on Garfield avenue might well urge that the main line of sewer down said avenue and into the creek at Forty-fifth street furnished for his property all and sufficient drainage, and no duty in law arose which required unbenefited property along Garfield avenue to bear any of the assessment for a lateral on Forty-third street, leading from Woodland avenue to Garfield avenue. Garfield, Woodland, Euclid and Michigan avenues are parallel and run in an easterly and westerly direction. Along each of these avenues, either for a part or the whole of the distance, the sewers in question were laid; cross-connecting sewers were also laid, in whole or in part, on Forty-first, Forty-third, Forty-fourth and Forty-fifth streets. All these came together for a common outlet at Forty-fifth street and Garfield avenue. Strictly speaking, any one of the avenues already provided with sewers could have drained independently into the creek, without reference to the other avenues and cross-streets, and if the hard-and-fast rule of no assessments without benefits is to be applied, this method, instead of a cheaper and more feasible one involving a community of interests, should have been adopted. The ultimate neces-

sity of a joint-district sewer is shown by the proof. This joint-district sewer will serve the whole district and an adjoining district. Into this joint-district sewer the west lots now partially sewered by the improvements in question, as well as the complaining east lots, will drain; thus establishing a community of interest justifying the act of the council in erecting the territory into a single district, when we consider the question in the light of the other facts, duties and presumptions existing, entrusted and entertained.

The only phase involved here of the absence of "due process of law" under our Constitution being in the final analysis the alleged unreasonableness and oppressiveness of the council's action in Due Process erecting into the sewer district the prop-of Law. erty of plaintiffs, we hold that plaintiffs cannot in this manner and at this stage assail this action. [Johnson v. Duer, supra; Heman v. Schulte, 166 Mo. l. c. 417.] If a timely question had been raised as to the alleged unreasonableness and oppressiveness of the action of the council in erecting and establishing the sewer district, so as to include plaintiffs' lots, by some appropriate proceeding, a different question might be before us. Touching this, however, we are not called on to pass.

II. Under the law and the facts here, are plaintiffs being assessed without accruing benefits in such wise as to violate section 1 of the 14th Amendment to the Constitution of the United States?

No contention is made by plaintiffs of lack of notice, nor upon the fact can such contention be maintained. Before any district sewer was constructed in the sewer district and *before therefore its territory became by charter immutable,* notice, daily for ten days, was given by publication in a newspaper, to the effect that on the 11th day of June, 1909, at the hour of 3

o'clock p. m., at the office of the Board
**Due Process** of Public Works, a hearing would be
**of Law:**
**14th Amendment.** had by said board "concerning the
proposed improvements, and that any
and all property-owners interested in such improve-
ment may then and there, by written petition or other-
wise, present their views in respect to the proposed
improvement." The notice also recited the number of
the proposed sewer district, the number and date of
approval of the ordinance by which the said district
was created and established, and the kind of sewers
proposed to be constructed, as well as the streets, ave-
nues and alleys along which sewers would be con-
structed. Ordinance No. 1872, so creating and estab-
lishing Sewer District No. 305, and to which specific
reference was made in the published notice, set out
fully and at length the boundaries of the proposed dis-
trict, and when taken in connection with the knowledge
of plaintiffs as to the situs of their own parcels of
land, must have indicated conclusively to plaintiffs
that their lands were included therein.

Setting aside then as not raised, and as not capa-
ble of arising, on the facts, the matter of notice and
of opportunity afforded for a hearing, was the inhibi-
tion of section 1 of the 14th Amendment to the Federal
Constitution violated in that, by the assessment made,
plaintiffs are deprived of their property without "due
process of law?"

In the case of French v. Barber Asphalt Paving
Co., 181 U. S. 324, which was an action to enforce a
tax bill for paving, the assessment for the cost of
which, it was contended, was void as violating the sec-
tion of the 14th Amendment under discussion, in that
the assessment was based on the front-foot rule with-
out regard to benefits accruing, the Supreme Court of
the United States said: "It was also said that the
class of lands to be assessed for the purpose may be
either determined by the Legislature itself, by defining

a territorial district, or by other designation; or it may be left by the Legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited; that the rule of apportionment among the parcels of land benefited also rests within the discretion of the Legislature, and may be directed to be in proportion to the position, the frontage, the area or the market value of the lands, or in proportion to the benefits as estimated by commissioners."

It was also said in the French v. Asphalt Co. case, supra:

"In Fallbrook Irrigation District v. Bradley, 164 U. S. 112, was involved the validity of the Irrigation Act enacted by the Legislature of the State of California. One of the objections urged against the act was that it permitted the whole cost to be levied by a board of directors of the district upon all of the real estate of the district according to value, with no reference to the degree of benefit conferred. As to this it was said by this court, through Mr. Justice PECKHAM:

" 'Assuming for the purpose of this objection that the owner of these lands had by the provisions of the act, and before the lands were finally included in the district, an opportunity to be heard before a proper tribunal upon the question of benefits, we are of opinion that the decisions of such a tribunal, in the absence of actual fraud and bad faith, would be, so far as this court is concerned, conclusive upon that question. It cannot be that upon a question of fact of such a nature this court has the power to review the decision of the State tribunal which has been pronounced under a statute providing for a hearing upon notice. The erroneous decision of such a question of fact violates no constitutional provision."

Clearly the case of Norwood v. Baker, 172 U. S. 269, cited by learned counsel for plaintiffs, is not upon

the facts before us, in conflict with the views above quoted. "That was a case where by a village ordinance, apparently aimed at a single person, a portion of whose property was condemned for a street, the entire cost of opening the street, including not only the full amount paid for the strip condemned, but the costs and expenses of the condemnation proceedings, was thrown upon the abutting property of the person whose land was condemned. This appeared, both to the court below and to a majority of the judges" of the Supreme Court of the United States, "to be an abuse of the law, an act of confiscation, and not a valid exercise of the taxing power." [French v. Barber A. P. Co., supra, l. c. 344; Norwood v. Baker, supra.] Again in the French-Barber case, at page 342, the court said: "If the Legislature in taxing lands benefited by a highway, or other public improvements, makes provision for notice, by publication or otherwise, to each owner of land, and for hearing him, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, his property is not taken without due process of law." Thus, apparently reaching a conclusion upon the question of "due process of law," under section 1 of the 14th Amendment to the Federal Constitution, strikingly like that already set forth above as having been reached by our own court upon the similar provision of our Constitution. [Meier v. St. Louis, supra; Gist v. Construction Co., supra.]

Bearing in mind the status and effect of the charter of Kansas City, it would seem that the principles enunciated in the case of Spencer v. Merchant, 125 U. S. 345, indicate clearly the position of necessity taken by the Supreme Court of the United States upon questions of local assessments for improvements. In this case the court said:

" 'The Act of 1881 determines absolutely and conclusively the amount of the tax to be raised, and the

property to be assessed and upon which it is to be apportioned. Each of these things was within the power of the Legislature, whose action cannot be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason. . . . The Legislature may commit the ascertainment of the sum to be raised and of the benefited district, to commissioners, but it is not bound to do so, and may settle both questions for itself; and when it does so, its action is necessarily conclusive and beyond review. Here an improvement has been ordered and made, the expense of which might justly have been imposed upon adjacent property benefited by the change. By the Act of 1881, the Legislature imposes the unpaid portion of the cost and expense, with the interest thereon, upon that portion of the property benefited which has thus far borne none of the burden. In so doing, it necessarily determines two things, viz., the amount to be realized, and the property specially benefited by the expenditure of that amount. The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount or proportion of the cost, even if it may have been mistakingly unjust, is not open to our review. The question of special benefit and the property to which it extends is of necessity a question of fact, and when the Legislature determines it in a case within its general power, its decision must of course be final.' "

If it be insisted (as we do not think it can be successfully done under the charter provision and the facts here), that a benefit direct and presently in existence must always be shown to accrue, we hold that such benefit was in existence in the instant case. That it was not unreasonable and oppressive for the city through its Common Council, after giving (before the right to alter the district was foreclosed) due notice of a hearing to plaintiffs, and all others interested, to assess against the lands of plaintiffs a part of the cost

of the sewers in question upon the solemn charter promise that the sewer district established was unchangeable, and that as the necessities arose other sewers would be constructed in the district for the use of plaintiffs and others in the district, *at the cost of all of the lots in all the district*. This plan, and scheme is but part of a continuing and growing system of constructing and maintaining sewers, and one particularly applicable and necessary on account of the broken topography and rapid growth of Kansas City. Indisputably, if the present necessities permitted, it is physically impossible to build all the sewers over all the district at the same time. Some of the territory in this sewer district is but sparsely settled, and much is vacant. If the city had ordered a full and complete system of storm and sanitary sewers to be constructed over all the streets and alleys of the district, we apprehend this action would not be here. Yet, if this had been done, such action might well be said to be oppressive and unreasonable, the cost and lack of present necessity therefor, considered. The present plan we must presume to have been the result of honest, careful judgment on the part of the city's officers. We must, prima facie, presume that they acted rightly, and we must presume that in the future they will so continue to act, and that they will promptly do and perform their several duties under the charter of the city. [Gist v. Construction Co., supra.] If they thus do, and follow the charter's provisions, the assessments set forth in the tax bills are but in a sense instalments paid on a comprehensive system of sewerage made necessary by the exigencies existing.

Cases cited from other jurisdictions by learned counsel do not seem to have had under consideration the feature of immutability of area and boundary of the sewer district arising here. Be that as it may, to hold the tax bills in question invalid, under the facts here and upon the attack here, would be but to hinder

and stilt improvements, without adding in the least to fairness or justice; since plaintiffs in the honest and fair working out of the system of sewerage adopted, are in no wise hurt, or taxed out of proportion to their ultimate benefits.

We rule the last point and the whole case against appellants, and hold that affirmance should be ordered, which is done accordingly. All concur.